**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2017
Decided May 8, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1547

| | |
|---|---|
| MAGIN E. VILLASENOR,<br>    *Petitioner-Appellant*, | Appeal from the United States<br>District Court for the Northern District<br>of Illinois, Eastern Division. |
| *v.* | No. 16 cv 148 |
| UNITED STATES OF AMERICA,<br>    *Respondent-Appellee*. | Joan B. Gottschall,<br>*Judge*. |

**O R D E R**

After a jury trial in 2006, Magin Villasenor was convicted of crimes arising from a conspiracy to distribute cocaine and marijuana. He was sentenced to a total of 300 months' imprisonment, and we affirmed his convictions on direct appeal. *United States v. Villasenor*, 664 F.3d 673 (7th Cir. 2011). Then in 2013 he filed a collateral attack under 28 U.S.C. § 2255, claiming that trial counsel rendered constitutionally ineffective assistance during unfruitful plea negotiations. The district court rejected that claim after an evidentiary hearing but authorized Villasenor to pursue this appeal. We conclude that Villasenor never established prejudice resulting from counsel's performance, and on that basis we affirm the judgment.

Villasenor had been charged with conspiring to distribute cocaine and marijuana, 21 U.S.C. §§ 846, 841(a)(1); distributing cocaine, *id*. § 841(a)(1); using a telephone to commit a felony drug crime, *id*. § 843(b); and possessing a firearm after a felony conviction, 18 U.S.C. § 922(g)(1). Before trial he rejected a plea offer from the government, then entered but withdrew a plea of guilty to the conspiracy count, and, finally, received but rejected again the same plea offer as before. The jury found him guilty on 16 counts, including the conspiracy. In his § 2255 motion Villasenor alleged that he rejected the government's favorable plea offers because trial counsel, Joseph Lopez, convinced him that rolling the dice was better than accepting the first offer and then lying to him about the terms of the second offer.

At an evidentiary hearing on Villasenor's motion, the government introduced evidence that he participated in a "proffer" session with investigators soon after he was indicted in July 2003. That was a first step toward a possible plea agreement calling for cooperation, but Villasenor lied during the session, so the government ended it. Still, the assistant United States attorney, Joseph Alesia, wasn't ready to give up. He concluded that Villasenor was responsible for roughly 600 kilograms of cocaine and, in the absence of a recidivism enhancement, *see* 21 U.S.C. §§ 841(b)(1)(A)(ii), 851, faced a likely imprisonment range of 292 to 365 months under the sentencing guidelines. AUSA Alesia went to his supervisors in March 2004 and obtained approval to offer a deal: If Villasenor cooperated and could establish that the conduct underlying his earlier drug convictions was part of the charged conspiracy, then the government would agree that those convictions shouldn't incur criminal history points, thus lowering his projected criminal history category and making the imprisonment range 210 to 262 months. This anticipated deal would include the government's promises to forego a recidivism enhancement (which, if the government was correct about the cocaine quantity, would mandate a life sentence based on two prior drug convictions) and move under U.S.S.G. § 5K1.1 for a sentence reduction up to 25% of the imprisonment range. In theory, then, Villasenor's sentence could be as low as 158 months.

Through attorney Lopez, the government proposed this deal to Villasenor. Lopez met with Villasenor to discuss the government's offer, but at the evidentiary hearing they gave conflicting accounts about what Lopez said. Villasenor testified that Lopez characterized the government's evidence as "weak" and recommended that he reject the plea offer, so he did. In contrast, Lopez testified that they discussed the possibility of cooperation given the government's guidelines calculations and the prospect that a recidivism enhancement would be filed if Villasenor didn't cooperate. According to Lopez, Villasenor did not want to cooperate, though the lawyer denied recommending

against cooperating. He also denied calling the government's case "weak," yet Lopez admitted telling Villasenor he "had a very good chance" of winning the conspiracy count because, as Lopez saw things, the evidence would establish multiple buyer-seller relationships, not an overarching agreement. During his testimony Lopez also called into doubt whether he had given Villasenor sound advice concerning the provable drug quantity: 5 kilograms of cocaine (the amount alleged in the conspiracy count) would have triggered a 10-year minimum without a recidivism enhancement, *see* 21 U.S.C. § 841(b)(1)(A)(ii), and after first saying he hadn't believed "the government could prove more than five kilos," Lopez was questioned about the sizeable amounts seized during the investigation and then said he'd told Villasenor that the government might be able to prove more than 5 kilograms. Still, Lopez maintained that on "numerous occasions" he and Villasenor had discussed options, including cooperation.

What's clear is that Lopez eventually wrote AUSA Alesia saying Villasenor wanted a jury trial. Then, more than a month later, Lopez asked Alesia to draft a plea agreement without a cooperation term or a stipulation to drug quantity. On June 18, 2004, Alesia instead responded with a formal, written proposal that did specify a drug quantity. The AUSA's transmittal letter explained that he'd included a stipulation to more than 150 kilograms of cocaine because that amount, which would yield an imprisonment range of 292 to 365 months, was "easily proven." Alesia's letter also warned that, if there was a trial, he would pursue a mandatory life sentence by filing the recidivism enhancement.

In addition, the letter from AUSA Alesia renewed the government's March 2004 proposal. Villasenor would be required to cooperate against the remaining defendants and could benefit from fewer criminal history points if his information allowed the government to confirm that his prior drug crimes were part of the charged conspiracy. The government also would consider a "small percentage" reduction from the guidelines range and recommend that Villasenor's wife receive pretrial diversion instead of prison time for her role in the conspiracy. Lopez admittedly withheld this letter from Villasenor but, at the evidentiary hearing, insisted he had told the defendant about the letter as well as the formal, written plea offer. Lopez testified that Villasenor rejected the plea agreement because he "[d]idn't agree with the guideline calculations, and neither did I." In contrast, Villasenor testified that Lopez disclosed only the formal, written offer; he wasn't told that the government's March offer was back on the table, and had he known, he would have accepted it.

Villasenor was unwilling to stipulate to 150 kilograms of cocaine, so Lopez then recommended that he plead guilty just to the conspiracy count. At the evidentiary hearing on Villasenor's § 2255 motion, Lopez testified that he had recommended this course of action as a way of preserving a challenge to the guidelines calculations and avoiding a recidivism enhancement. But the parties had not agreed to anything in writing (even if Villasenor assumed that the remaining counts would be dismissed), and on the morning of the change-of-plea hearing, the government filed an enhancement information (listing just one prior drug felony) that doubled the statutory minimum from 10 years to 20 (assuming a drug quantity of 5 or more kilograms of cocaine). *See* 21 U.S.C. §§ 841(b)(1)(A)(ii), 851. Villasenor nevertheless went forward with his guilty plea on July 1, 2014.

As it happened, though, Villasenor never was sentenced on that guilty plea. Instead, four weeks later, relying on *Blakely v. Washington*, 542 U.S. 296 (2004), he moved to withdraw his plea. Villasenor asserted that he had not appreciated the ramifications of *Blakely* and had been caught off guard by the government's last-minute enhancement information. The district court allowed Villasenor to withdraw his guilty plea in January 2015 after the release of *Booker v. United States*, 543 U.S. 220 (2005).

Meanwhile, with Villasenor's motion to withdraw his guilty plea still pending, AUSA Alesia wrote Lopez on September 29, 2004, to memorialize an earlier phone conversation. He stated that Villasenor still could proffer and cooperate. Alesia reiterated the government's stance that Villasenor's criminal history category would drop significantly if, with Villasenor's help, the government could verify that the conduct underlying his earlier convictions actually was part of the charged conspiracy. Alesia also stated that the government would consider withdrawing the enhancement information. At the evidentiary hearing Lopez testified—but Villasenor denied—that they had discussed this renewed option of cooperating. In fact, on the very day he received the AUSA's offer, Lopez wrote Villasenor falsely asserting that Alesia had "assured me that under no circumstances" would the enhancement information be withdrawn "even if the Judge vacates your plea." Lopez testified that he wrote this letter on the assumption that Villasenor would not want to cooperate. That assumption doesn't explain his lie but, as it turns out, Lopez may have guessed correctly: At the evidentiary hearing Villasenor never said he would have accepted Alesia's latest offer if it had been conveyed to him by Lopez.

In denying the § 2255 motion, the district court found that Lopez had communicated the contents of Alesia's June 18, 2004, letter to Villasenor, including the

section about potential cooperation. But "Villasenor still did not want to cooperate," the court said, despite being told by Lopez of the potential benefits of cooperation, including the possibility that the government would forego filing a recidivism enhancement and the possibility of pretrial diversion for his wife. The court also found that Lopez's advice concerning the strength of the government's case, though contradictory and inconsistent, was not constitutionally deficient because Villasenor had been "adamant in his refusal to cooperate" and because Lopez had given Villasenor a mix of positive and negative advice concerning his case.

To have prevailed on his claim that Lopez was constitutionally ineffective, Villasenor needed to show that Lopez's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 693 (1984); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009). On appeal, Villasenor presses his theory that Lopez gave deficient advice in connection with the government's plea offers in AUSA Alesia's letter of June 18, 2004. Essentially, Villasenor contends that Lopez gave him bad advice about whether to accept one of those offers and, in fact, failed even to disclose that Alesia had proposed more than one alternative.

We need not address Villasenor's argument that Lopez's performance was deficient, however, because he lacks evidence of prejudice from the events in June 2004. *See McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017). Villasenor first maintains that he was prejudiced because Lopez's advice led him in July 2004 to enter a guilty plea to the conspiracy charge. But he was allowed to withdraw that plea and proceed to trial, erasing any prejudice that would have been caused by Lopez's deficient advice to enter the plea in lieu of accepting the government's June 2004 plea offers. *See United States v. Hernandez*, 948 F.2d 316, 319 (7th Cir. 1991) (noting that petitioner who withdrew guilty plea could not claim prejudice from that plea). Villasenor asserts, though, that he was still prejudiced because the government had filed an enhancement information and, he insists, his only remaining option after withdrawing his guilty plea was to proceed to trial in the face of overwhelming evidence against him. Yet this argument ignores that the government's plea offer remained on the table: In September 2004, AUSA Alesia offered Villasenor the same deal previously made available in his June 18, 2004, correspondence and offered to withdraw the enhancement information. And despite his awareness of the enhancement information and the government's evidence against him, Villasenor did not accept this offer.

True, at the evidentiary hearing on his § 2255 motion, Villasenor asserted that Lopez had not told him about the September 2004 offer, but in this court he abandons that contention. Thus, for purposes of this appeal, Villasenor does not contest that the same terms were conveyed to him after it became increasingly likely that the district court would allow him to withdraw his guilty plea. *See Estremera v. United States*, 724 F.3d 773, 779 (7th Cir. 2013) (offering defendant same plea agreement that was available earlier is possible remedy for claim of ineffective assistance of counsel during plea negotiations). Moreover, at the evidentiary hearing Villasenor never contradicted Lopez's testimony that he would have been uninterested in the renewal of the June offer, which included cooperation as one of the terms. All of this dooms his claim that he was prejudiced by the events in June.

                                                                                        AFFIRMED.