In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2043

ABRAHAM ESTREMERA,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 6519—**James F. Holderman**, *Judge*.

ARGUED JULY 9, 2013—DECIDED JULY 30, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Abraham Estremera was
sentenced to life imprisonment following his convictions
for conspiring to distribute cocaine plus possessing a
firearm despite an earlier felony conviction. We
affirmed his convictions and sentence, along with those
of some confederates. *United States v. Bustamonte*, 493
F.3d 879 (7th Cir. 2007). Estremera then sought collateral

relief under 28 U.S.C. §2255, contending that his lawyer had misstated the terms of a plea bargain proposed by the prosecutor. Had the lawyer done his job, Estremera insisted, he would have pleaded guilty and could have received a lower sentence. The district court denied the petition without holding a hearing. 2012 U.S. Dist. LEXIS 28468 (N.D. Ill. Mar. 2, 2012).

The United States asks us to affirm on the ground that the district court erred by reaching the merits while a question of timeliness remained unresolved. Estremera's direct appeal ended on February 27, 2008, when the Supreme Court denied his petition for certiorari, see *Clay v. United States*, 537 U.S. 522 (2003), but he did not invoke §2255 until October 13, 2009. Section 2255(f) sets a limit of one year unless one of four circumstances restarts the clock, and the United States maintains that none of these four obtains. The district court bypassed the subject, concluding that it would be necessary to hold a hearing before resolving the limitations defense, while the judge thought that the merits could be resolved without a hearing.

Federal statutes of limitations do not affect the tribunal's subject-matter jurisdiction, see *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) (general proposition); *Day v. McDonough*, 547 U.S. 198, 205 (2006) (application to collateral attacks), so the district court was right to conclude that it is permissible to reject a petition on the merits without resolving a limitations defense. There is no necessary priority among non-jurisdictional reasons for rejecting a suit or claim. It makes sense to tackle

the merits first when they are easy and the limitations question hard, just as it makes sense (and is permissible) to reject a collateral attack on the merits while other procedural defenses, such as waiver, default, or lack of exhaustion, remain in the background. 28 U.S.C. §2254(b)(2).

The district judge also was right to conclude that this petition could not be dismissed as untimely without a hearing. Estremera contends that he told his lawyer to file a collateral attack, and that counsel failed to keep the promise to do so—and that not until the year had almost expired did Estremera realize that he had been left in the lurch. Abandonment by counsel can toll the limitations period. See *Holland v. Florida*, 130 S. Ct. 2549 (2010). *Holland* deals with state prisoners' petitions under §2254, but its conclusion is equally applicable to federal prisoners' petitions under §2255. The Justices stated that not all shortcomings by counsel meet the standard required for tolling: "(1) that [the prisoner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 130 S. Ct. at 2562, quoting from *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). It would take an evidentiary hearing (or an exchange of affidavits revealing the absence of a material factual dispute) to learn whether Estremera had been pursuing his rights diligently and whether whatever counsel did or didn't say or do put an "extraordinary" obstacle in his path, given the conclusion in *Holland* that a lawyer's "garden variety" negligence does not justify tolling. 130 S. Ct. at 2564. On the current state of the record, we

have no idea what happened, so the legal standard cannot be applied. And the record also does not permit a court to determine whether Estremera acted diligently after counsel bugged out. See, e.g., *Tucker v. Kingston*, 538 F.3d 732, 734–35 (7th Cir. 2008).

Estremera contends that diligence on his part was not required because he gets extra time under §2255(f)(2), which starts a new one-year clock on "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action". He contends that, by the time he realized that his lawyer had abandoned him, he was in his prison's "special management unit" and could not use its law library. He characterizes the lack of library access between June 2008 and July 2009 as an "impediment" of the government's creation and contends that a new one-year period began once this impediment was "removed" by restoration of access.

The United States offers two responses: first, that lack of library access never supports a reset of the time under §2255(f)(2); second, that Estremera's prison offered electronic access to persons in the special management unit, so there was no obstacle. Unfortunately, the record does not demonstrate what sort of electronic access was available and whether it was enough for any particular prisoner. Estremera is literate in English, but we don't know whether he would be competent to use Westlaw or Lexis without assistance. Librarians and

experienced prisoners help the inmates use physical law libraries; this record does not tell us whether electronic access was an adequate substitute. So the second argument is premature.

And the first is wrong. Lack of library access can, in principle, be an "impediment" to the filing of a collateral attack. The United States' contrary position assumes that all a prisoner need do is narrate the facts; legal argument and analysis comes later. Indeed, the form that all prisoners must use when applying for relief under §2255 tells them to stick to the facts: "Do not argue or cite law. Just state the specific facts that support your claim." If legal argument and citation are forbidden, the United States contends, prisoners don't need law libraries to file collateral attacks—though they may need law libraries later, in order to support collateral attacks already on file.

This argument supposes that "fact" and "law" can be neatly separated. They can't. The form tells prisoners to "state the specific facts that support your claim." But how does a prisoner know what facts establish a "claim"? Estremera contends that his lawyer misrepresented the requirements of the proposed plea agreement. If the lawyer erred, Estremera knew it without needing a law library. But does such an error establish a good "claim" for relief? *That* requires some legal knowledge.

Prisoners who file collateral attacks without doing legal research face two dangers. First, the district judge may dismiss the petition summarily on screening

under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. A prisoner's failure to allege all that is necessary to a valid claim may cause him to lose a winnable petition. Second, a prisoner who files a §2254 or §2255 petition based on a bad legal theory may doom his chance to prevail on a good one, for the law allows just one petition as of right. Second or subsequent petitions are possible only under the conditions specified in 28 U.S.C. §§ 2244(b) or 2255(h). Thus filing a petition without research is risky: a good claim may be lost as undeveloped, or a bad claim may be advanced and rejected, blocking relief on a good claim later.

Our opinion in *Moore v. Battaglia*, 476 F.3d 504, 508 (7th Cir. 2007), reserved the question whether lack of library access ever allows more time under §2255(f)(2). We now join other circuits in holding that it may. See, e.g., *Egerton v. Cockrell*, 334 F.3d 433, 438 (5th Cir. 2003); *Whalem v. Early*, 233 F.3d 1146 (9th Cir. 2000) (en banc). The United States observes that *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006), and *Tucker v. Kingston*, *supra*, hold that lack of library access does not justify equitable tolling on the facts of those cases, but Estremera doesn't propose common-law tolling; he invokes §2255(f)(2). That makes it unnecessary to decide when equitable tolling (more properly equitable estoppel, the doctrine that concerns one side's obstruction of another's potential litigation) would be available.

To hold that the absence of library access may be an "impediment" in principle is not necessarily to say

that lack of access was an impediment for a given prisoner. "In principle" is a vital qualifier. Perhaps Estremera had no need of a library. Would he have jeopardized a good claim—or advanced a bad one, closing the door to a good claim later—if he had filed without consulting a library? Did he consult one before filing this petition? (The prosecutor maintains that he did not even ask for library access until April 2009, more than a year after his conviction became final.) If he didn't want or need a law library during the year after his conviction became final, its unavailability (if it was unavailable) would not have been an impediment. These and other subjects—in addition to the questions what access Estremera had, and when—would require an evidentiary hearing to explore.

The district court's decision therefore cannot be affirmed on the ground that the petition was untimely, and we must take up the merits. Estremera filed an affidavit stating that, every time he met with his lawyer, he told counsel "that I wanted to plead guilty and accept responsibility for my own conduct, but I would not agree to give information about, or testify against anyone else." Estremera and his confederates all belonged to the Latin Kings, a violent gang inclined to retaliate against members who assist police or prosecutors. The prosecutor's early offers called for Estremera to testify at other defendants' trials; his lawyer told the prosecutor that Estremera would not do that. The prosecutor then made other proposals, which were less beneficial to Estremera—he would not

get the potentially large reduction for substantial assistance to the prosecution—but required less of him.

The prosecutor's final proposal, which was in writing, omitted a promise by Estremera to testify at anyone's trial or even to be debriefed. It extended three benefits in exchange for the plea: the prosecutor would dismiss the weapons charge, move for a three-level reduction of Estremera's offense level, see U.S.S.G. §3E1.1(b), and recommend a sentence at the low end of the Guideline range. Estremera would plead guilty to the drug charge, acknowledge that the minimum sentence was 10 years and the maximum life, waive his rights to appeal (reserving a right to contest the plea's validity) and collateral attack, and agree to the forfeiture of his weapons and any property related to the drug crime. Paragraph 15 of the draft, which deals with forfeiture, contains this sentence: "Defendant will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third-party in the event a third-party files a claim." That is the proposal's only reference to assistance.

According to Estremera's affidavit, his lawyer gave him a copy of this proposal but "did not discuss anything in the agreement with me. He … simply told me there was another plea offer and if I wanted to accept it I would have to sign the agreement but if I did so I would be required to cooperate with the government against others." When denying Estremera's petition, the district judge assumed that advice by the lawyer that the prosecutor's proposal entailed testifying

against others would have been ineffective assistance of counsel. But the judge understood the affidavit to distinguish "cooperation" from "testimony" and concluded that the lawyer had used the former word but not the latter. The draft agreement indeed required cooperation in the forfeiture proceeding, the district judge observed, so counsel's advice was accurate.

This seems to us too sanguine a view of the matter. Estremera is a prisoner, not a securities lawyer making subtle linguistic distinctions in a bond indenture. Against a background of negotiations in which his lawyer told him that the prosecutor wanted Estremera's trial testimony, a statement that the latest draft still called for him to "cooperate with the government against others" readily could have been understood as a reference to turning state's evidence. Counsel could have clarified by going through the proposal, but Estremera avers that the lawyer did not discuss with him "anything" in the agreement; Estremera thus did not learn that cooperation would have been limited to ensuring the forfeiture of Estremera's property.

If Estremera read the proposal he would have come across the phrase "the ancillary stages of any forfeiture proceedings". Would he have understood what an "ancillary stage" is? A trial perhaps? Would he have been confident that "*any* forfeiture proceedings" (emphasis added) was limited to the forfeiture of his own property? If "any" included forfeiture proceedings concerning the property of other Latin Kings, then the cooperation clause might well oblige him to testify. A

lawyer probably would read "any" in ¶15 to refer back to ¶14, which described the property that would be forfeited. But Estremera is not a lawyer, and to go by his affidavit (which is all we have to go on) his lawyer did not tell him what this commitment entailed. Nor did counsel try to obtain clarification from the prosecutor, even though that step could have put Estremera's mind at ease.

The Supreme Court held in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012), that lawyers must tell their clients about offers of plea bargains. *Hare v. United States*, 688 F.3d 878 (7th Cir. 2012), concludes that these decisions do not create "new rules" and therefore apply on collateral review. The parties assume in this litigation, as we did in *Overstreet v. Wilson*, 686 F.3d 404 (7th Cir. 2012), that counsel's obligation entails explaining the material terms of the prosecutor's offer. Given the parties' mutual assumption, here as in *Overstreet* we need not decide whether counsel's obligation extends to ensuring the client's understanding of each term's significance—for the problem here was not Estremera's failure to grasp what the lawyer told him, but the absence of a review of the offer's terms plus a false statement about a material part of the offer. See also *Julian v. Bartley*, 495 F.3d 487 (7th Cir. 2007) (misleading the defendant about an offer's terms can constitute ineffective assistance).

Estremera's affidavit may not show the whole picture—indeed, it may contain falsehoods. The way to find out what happened is to hold a hearing at which

both Estremera and his lawyer can testify about what passed between them before Estremera rejected the offer and decided to go to trial.

The prosecutor tells us that a hearing is unnecessary because Estremera was sure never to plead guilty, and his lawyer's advice, even if bad, therefore did not cause prejudice. The district judge agreed with this view, thinking that Estremera suffers from regret after being convicted and sentenced to life imprisonment. As the district judge saw things, Estremera wants to have his cake and eat it too, by getting a crack at acquittal and only then seeking the (potentially) lower sentence available to those who plead guilty. Yet Estremera's affidavit asserts that from the outset he wanted to plead guilty and would have done so had he known that the prosecutor's final proposal did not require him to testify against other gang members. That statement may be false, as the district judge believed, but it cannot be rejected without an evidentiary hearing.

Whether a prisoner's statement that he would have pleaded guilty requires corroboration in order to be believed is an interesting question pending before the Supreme Court in *Burt v. Titlow*, cert. granted, 133 S. Ct. 1457 (2013). See also *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (requiring corroboration). Suppose counsel told Estremera that he was likely to be sentenced to life imprisonment whether he pleaded guilty or not—he was a big-time dealer, held accountable for distributing more than 150 kilograms of cocaine, and is a career offender to boot. That would make it hard

to see what he could have hoped to gain by pleading guilty, and it would be correspondingly hard to find that there was a "reasonable probability" (the legal standard, see *Cooper*, 132 S. Ct. at 1384–85) that he would have entered a guilty plea had he received better advice about what sort of cooperation the proposal required. Estremera was 35 at the time of trial, so an extended sentence (say, 480 months) could amount to a life term as a practical matter. But we need not pursue this topic; decision should await the results of the hearing and the Supreme Court's opinion in *Titlow*.

At any hearing, the judge should recognize that not only Estremera's testimony but also his former lawyer may try to make himself look good, or have a faulty memory, or both. Sometimes lawyers are tempted to help out their former clients by admitting to nonexistent failings. It can be hard to piece together what happened when only recollections are available; writings exchanged before the trial would be more reliable. But this is the district judge's bailiwick, not ours.

Before we close, a few words are in order about the remedy should the hearing on remand lead to conclusions that the petition is timely and that counsel furnished ineffective assistance. Estremera maintains that, if he prevails at the hearing, the district court must direct the prosecutor to offer the same plea agreement that had been on the table before the trial. *Cooper* and *Frye* mentioned this as a possible remedy—adding that the judge would be free to reject the plea, the agreement, or both, and stick with the original sentence—but did

not hold that it is the only permissible remedy. *Cooper*, 132 S. Ct. at 1389. Indeed, the second question presented in *Titlow* is whether an obligation to offer the original deal again is even an *appropriate* remedy when it is no longer possible for the defendant to fulfil all of the promises that would have been valuable to the prosecutor, had a deal been struck before trial. The deal offered to Estremera would have rewarded him for saving the prosecutor the expense and effort of preparing for and holding a trial, and for cooperating in forfeiture proceedings. The time for cooperation is past, the trial has been held, Estremera enjoyed the opportunity to be acquitted, and these things may affect the remedy. The district court may think it prudent to await the Supreme Court's opinion in *Titlow* before crafting a remedy, if the judge concludes that any remedy is in order.

Circuit Rule 36 will apply on remand.

REVERSED AND REMANDED