In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 19-2048

JOHN WORMAN,

*Petitioner-Appellant*,

*v.*

FREDERICK ENTZEL, Warden,

*Respondent-Appellee*.

---

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cv-1144 — **James E. Shadid**, *Judge*.

---

ARGUED FEBRUARY 27, 2020 — DECIDED MARCH 26, 2020

---

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. John Worman reacted to losing his job and a business opportunity by mailing a pipe bomb to his former supervisor. Federal charges ensued, and a jury convicted Worman on all counts, leading to a sentence of 44 years' imprisonment. Worman was unsuccessful in challenging his sentence on direct appeal and in a motion to vacate his sentence. The Supreme Court then decided *Dean v. United States*, 137 S. Ct. 1170 (2017), which Worman was right to

recognize as calling into question the length of his sentence. But Congress has limited prisoners to one pursuit of habeas corpus relief, subject to very narrow exceptions. So Worman's challenge became finding a viable path to file a second request for habeas relief, and he ultimately invoked 28 U.S.C. § 2241. The district court concluded that, even though *Dean* provided Worman a surefire basis for a meaningful sentencing reduction (from 44 to 30 years), he did not meet the exacting and narrow requirements for being able to use § 2241 to pursue a new sentence. We agree and affirm, with today's decision exemplifying the stark reality that the limitations on habeas corpus relief can have very real and lasting consequences for prisoners laboring to navigate its complexities.

# I

John Worman used to work at Winnebago Industries, an Iowa company that manufactures and sells recreational vehicles. His supervisor, Paulette Torkelson, repeatedly noted his poor performance and in time the company terminated him. Worman then started his own company and landed a contract to provide parts to Winnebago, but the agreement fell through. Worman blamed Torkelson for the misfortune and sought revenge by mailing her a pipe bomb. The U.S. Postal Service intercepted the package, and a criminal investigation commenced in short order.

A federal grand jury sitting in the Northern District of Iowa charged Worman with mailing an explosive device (18 U.S.C. § 1716), possessing an unregistered destructive device (26 U.S.C. §§ 5861(d), 5845(f)), transporting an explosive device (18 U.S.C. § 844(d)), and possessing and using a destructive device in furtherance of a crime of violence (18 U.S.C. § 924(c)(1)(A), (B)(ii)). Worman's mailing of a pipe bomb

constituted the predicate crime of violence for purposes of the § 924(c) charge. See, *e.g.*, *United States v. Strickland*, 261 F.3d 1271, 1274 (11th Cir. 2001) (concluding that the offense of transporting an explosive, 18 U.S.C. § 844(d), constitutes a predicate offense under § 924(c)); *United States v. Collins*, 109 F.3d 1413, 1419 (9th Cir. 1997) (reaching same conclusion for crime of mailing a destructive device, 18 U.S.C. § 1716).

On the alleged facts—and owing to the gravity of Worman's conduct—the § 924(c) charge brought with it a mandatory minimum sentence of 30 years' imprisonment. See 18 U.S.C. § 924(c)(1)(B)(ii). Congress further required that the 30-year mandatory sentence be served consecutive to (as opposed to concurrently with) any other sentence imposed on any other count of conviction. See *id*. § 924(c)(1)(D)(ii); see also U.S.S.G. § 5G1.2(a) (explaining consecutive and concurrent sentences).

Worman proceeded to trial in the Northern District of Iowa, and the jury convicted him on all counts. The district court then sentenced Worman to 361 months' imprisonment—360 months (30 years) for the § 924(c) offense and one month for each, to run concurrently, of the other offenses of conviction. The latter sentence—the one month for mailing and possessing and transporting a pipe bomb—was 167 months below the low end of the advisory guidelines range of 168 to 201 months for those predicate offenses. The sentencing judge explained that a total sentence of 361 months was sufficient, especially given that Worman would not be released until he was 84. The sentencing court likewise pointed to Worman's lack of any prior criminal history in justifying the 167-month downward variance.

As sensible as it may sound, the sentence reflected a legal error. The reason is because, at the time of Worman's sentencing, the Eighth Circuit prohibited district judges from considering a mandatory consecutive sentence (like Worman's 30-year § 924(c) sentence) when granting a downward variance on another count. See *United States v. Hatcher*, 501 F.3d 931, 934 (8th Cir. 2007) (ordering resentencing because district court impermissibly considered the severity of a firearm sentence with a mandatory and consecutive minimum when imposing a reduced sentence on other counts). On appeal, therefore, the Eighth Circuit followed its precedent, vacated Worman's sentence, and ordered resentencing. See *United States v. Worman*, 622 F.3d 969, 978 (8th Cir. 2010). The Supreme Court declined Worman's request to review the case.

On remand the district court adhered to the Eighth Circuit's direction and resentenced Worman to 528 months' (44 years') imprisonment—168 months (14 years) for the pipe-bomb offenses and 360 mandatory and consecutive months (30 years) for the § 924(c) offense. In doing so, the district judge made plain that this outcome—which added 14 years to the original sentence—worked an injustice for Worman.

In 2016, Worman turned to pursuing post-conviction relief, filing a *pro se* motion for a new sentence under 28 U.S.C. § 2255. He sought relief based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015), which invalidated the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B). The motion had no merit, though, because *Johnson*'s holding did not extend to any aspect of Worman's conviction under § 924(c). Worman did not pursue an appeal.

Two years later the Supreme Court decided *Dean v. United States*, 137 S. Ct. 1170 (2017). *Dean* overruled the Eighth Circuit's case law prohibiting sentencing courts from considering § 924(c)'s mandatory minimum when determining the appropriate sentence for the other counts of conviction. See *id*. at 1176–78. By extension, then, *Dean* established that the district court committed no legal error in initially sentencing Worman to 361 months.

Worman recognized the importance of *Dean* and turned his attention to securing a sentencing reduction through a second pursuit of habeas relief. In doing so, though, he had to overcome a substantial procedural obstacle—he had already filed a motion to vacate his sentence, the one seeking relief based on *Johnson*. Even though it went nowhere, Worman's first filing had consequences: subject to narrow exceptions, Congress has limited federal inmates to one motion for habeas relief. See 28 U.S.C. § 2255(h). To file a second § 2255 motion, inmates like Worman must receive express authorization from a circuit court and that requires showing the claim in question relies on either newly discovered evidence showing that a reasonable jury could not have found the inmate guilty of the offense of conviction or a new rule of constitutional law previously unavailable that applies retroactively to cases on collateral review. See *id*. § 2255(h)(1), (2). These requirements are demanding. See, *e.g.*, *Suggs v. United States*, 705 F.3d 279, 281 (7th Cir. 2013) (explaining that the statute "sharply restrict[s] a second or successive motion to narrow circumstances").

Worman realized this firsthand when the circuit court denied his request to file a second § 2255 motion. He went ahead anyway and filed the motion, but the district court denied it

as untimely. See 28 U.S.C. § 2255(f) (establishing a one-year limitation period absent certain circumstances). What Worman tried next provides the basis for this appeal.

Recognizing that any further motions under § 2255 were a dead end, Worman turned to 28 U.S.C. § 2241, a provision embodying and authorizing what is often referred to as traditional habeas relief. Worman filed his § 2241 petition in the Northern District of Iowa, but that court rightly transferred the matter to the Central District of Illinois, the district in which Worman is now incarcerated. See *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (explaining that whereas § 2255 motions must proceed in the jurisdiction of conviction, a § 2241 petition can be brought only in the district of incarceration).

The district court dismissed the petition, concluding that, even though the Supreme Court's recent decision in *Dean* provided Worman a strong challenge to his 44-year sentence, he could not satisfy the exacting requirements for pursuing relief under § 2241. Worman now appeals.

## II

### A

Worman's appeal implicates an area of law riddled with complexity—the savings clause of 28 U.S.C. § 2255(e) and the narrow and limited instances under which a prisoner can pursue relief under § 2241. Other cases have required us to spill substantial ink traversing this complexity. See, *e.g.*, *Chazen*, 938 F.3d at 856. Perhaps a future appeal will require, or provide an opportunity for, our full court to sort out confusion in our case law in this area. See *id.* at 864, 866 (Barrett, J., concurring) (explaining that our case law contains differing

interpretations of key limiting language in § 2255(e) and has been interpreted in ways that may undermine the limits Congress has imposed on second and successive pursuits of habeas relief in § 2255(h)). Worman's appeal can be resolved on much narrower grounds, however.

Section 2255(h) limits second and successive federal habeas motions. All agree that Worman does not meet either of the two exceptions authorizing a second § 2255 motion. The focus of the appeal is instead on § 2255(e)—the so-called savings clause. The provision affords prisoners the opportunity to request traditional habeas relief under § 2241 if § 2255 is "inadequate or ineffective to test the legality of [his] detention." 28 U.S.C. § 2255(e). It is referred to as the "savings clause" because it may save § 2255 from constitutional infirmity under the Suspension Clause. See *Webster v. Daniels*, 784 F.3d 1123, 1152 (7th Cir. 2015) (en banc) (Easterbrook, J., dissenting) (noting that the Supreme Court treats § 2255(e)'s language as a safety valve (citing *United States v. Hayman*, 342 U.S. 205 (1952))).

We analyzed the savings clause in *In re Davenport* and determined that it allows petitioners "a reasonable opportunity" to obtain a judicial determination of "the fundamental legality" of their convictions and sentences. 147 F.3d 605, 609 (7th Cir. 1998); see also *Webster*, 784 F.3d at 1136 (articulating the same point and interpreting *Davenport* the same way). Since then we have developed a three-part test for determining whether § 2255 is "inadequate or ineffective":

- *Step #1*: the federal prisoner must seek relief based on a decision of statutory interpretation (as opposed to a decision of constitutional

interpretation, which the inmate could raise in a second or successive § 2255 motion);

- *Step #2*: the statutory rule of law in question must apply retroactively to cases on collateral review *and* could not have been invoked in a first § 2255 motion; and

- *Step #3*: a failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of justice."

*Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016); see also *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019) (articulating and applying the same test).

We move quickly beyond step #1 because everyone agrees that the Supreme Court's decision in *Dean* was a decision of statutory law—an interpretation of a district court's sentencing discretion under 18 U.S.C. § 3553(a). No aspect of *Dean* interpreted the Constitution.

Step #2 presents the question on which Worman's appeal turns—whether *Dean* applies retroactively to cases on collateral review. Because we conclude that it does not, our analysis ends there.

B

The north star precedent on the question of retroactivity in the law of habeas corpus came in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion). The proper analysis follows the model of a decisional tree, with each branch presenting sequential questions of increasing levels of detail. See *Chaidez v. United States*, 655 F.3d 684, 688 (7th Cir. 2011) (laying out *Teague*'s multi-step analysis).

Worman begs to differ, urging us to refrain from applying *Teague*'s retroactivity framework and instead to rely on *Bousley v. United States*, 523 U.S. 614 (1998), to conclude that all interpretations of criminal statutes apply retroactively to cases on collateral review. We decline the invitation. *Bousley* addressed the retroactivity of *Bailey v. United States*, 516 U.S. 137 (1999), and decided that *Bailey* announced a substantive (and therefore retroactive) rule because it narrowed the scope of a criminal statute, 18 U.S.C. § 924(c). No court has interpreted *Bousley* to sideline or limit *Teague*'s application. Right to it, *Teague* supplies the decisional framework for Worman's appeal.

At the outset, *Teague* requires identification of the rule of law in question and asks whether it embodies an "old" or "new" rule. To be "new," the rule at issue—here, the degree of sentencing discretion the Supreme Court recognized in *Dean*—must not have been dictated by precedent. See *Teague*, 489 U.S. at 301. If the rule is determined to be old (or, if you prefer, "not new"), it cannot provide the basis of a claim under the savings clause because the petitioner could have raised it earlier. See *In re Davenport*, 147 F.3d at 610 (explaining that a § 2241 petition must be based on a claim that the petitioner "could at no time present in a motion under section 2255, nor earlier in his direct appeal").

If the rule is new, however, *Teague* proceeds to require determining what type of rule the Court announced. See 489 U.S. at 311. So-called "substantive" rules—which reduce or enlarge the scope of a criminal statute—are always retroactive. See *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004). Procedural rules, which govern all other aspects of a criminal proceeding, are retroactive only if they are "watershed."

*Teague*, 489 U.S. at 311; see also *Schriro*, 542 U.S. at 352 (explaining that habeas petitioners need to make a more demanding showing to rely retroactively on a new procedural rule because changes to procedure have a "more speculative connection to innocence" than substantive rules). To make that determination, we must look closer at the content of the rule and decide whether it goes to the fundamental fairness and accuracy of the criminal proceeding. See *Teague*, 489 U.S. at 313 (limiting retroactive effect to "those new procedures without which the likelihood of an accurate conviction is seriously diminished").

Starting from the beginning—with the threshold old or new rule question—the answer is easy: *Dean* is new because the rule the Court announced, the sentencing discretion it recognized, was not compelled by any prior precedent. Recall that the Eighth Circuit's precedent in place at the time of Worman's initial sentencing precluded the district court from exercising the very discretion that led to the 361-month sentence. See, *e.g.*, *United States v. Dean*, 810 F.3d 521 (8th Cir. 2015); see also *Chaidez*, 655 F.3d at 689 (noting that a Supreme Court rule is likely to be new "if the lower courts were split on the issue"). Indeed, *Dean* itself made its way to the Supreme Court from the Eighth Circuit. Put differently, it took the Supreme Court deciding *Dean* to reveal the error in the Eighth Circuit's law, settle a circuit split, and announce a new rule.

The next fork in the road comes with determining whether *Dean* announced a new substantive or procedural rule. By its terms, *Dean* is only about the proper and available scope of discretion district judges can exercise in sentencing defendants like Worman, who find themselves facing a § 924(c)

mandatory minimum and a separate sentence for one or more § 924(c) predicate offenses. That means the rule announced in *Dean* is procedural, not substantive. *Dean*, in short, regulates sentencing procedure, with the Court leaving untouched the reach of any criminal statute. See *Welch v. United States*, 136 S. Ct. 1257, 1264–65 (2016) (distinguishing between procedural rules, which have "to do with the range of permissible methods a court might use," and substantive rules, such as the one announced in *Johnson*, which invalidated the Armed Career Criminal Act's residual clause and thereby redefined the range of conduct punishable by the Act).

The final branch in *Teague*'s decisional tree requires asking whether the new procedural rule announced in *Dean* constitutes a so-called "watershed rule"—a rule both necessary to prevent "an impermissibly large risk" of an inaccurate conviction and which changes our understanding of the "bedrock procedural elements" essential to the fairness of a proceeding. *Teague*, 489 U.S. at 311–13; see also *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (applying *Teague* and identifying the same twofold inquiry at this step). If this dimension of the *Teague* analysis sounds demanding, that is the right reaction. With the exception of *Gideon v. Wainwright*, 372 U.S. 335 (1963), the landmark decision recognizing an indigent criminal defendant's right to counsel, the Supreme Court has not identified any other procedural rules qualifying for watershed status. See *Whorton*, 549 U.S. at 418 (emphasizing that "in the years since *Teague*, [the Court] has rejected every claim that a new rule satisfie[s] the requirements for watershed status").

It is this final hurdle that Worman cannot clear. *Dean* did not establish a watershed rule of criminal procedure, and we reach that conclusion by heeding the Supreme Court's

emphasis in *Teague* itself that it is "unlikely that many such components of basic due process have yet to emerge." 489 U.S. at 313. No court has held otherwise.

Consider, too, the many other new procedural rules that have fallen short of watershed status. A prime example came in *Crawford v. Washington*, 541 U.S. 36 (2004). The Court in *Crawford* held that the Sixth Amendment's Confrontation Clause prohibits the use of out-of-court testimonial statements at trial unless that witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id*. at 68. *Crawford* worked a sea change in criminal procedure—a point many commentators recognized. See, *e.g.*, Robert P. Mosteller, Crawford v. Washington: *Encouraging and Ensuring the Confrontation of Witnesses*, 39 U. RICH. L. REV. 511, 626 (2005) ("After *Crawford*, the world of confrontation law has been radically altered."). Yet three years later, in its 2007 decision in *Whorton*, a unanimous Supreme Court concluded that *Crawford* did not announce a new watershed rule of criminal procedure. See 549 U.S. at 421. *Crawford* did not qualify, the Court explained, because the confrontation right recognized there was not a "profound and sweeping change" that redefined our understanding of what a fair proceeding requires. *Id*. If a new Supreme Court case meaningfully expanding a defendant's right to confront witnesses does not sufficiently implicate the fundamental fairness and accuracy of a proceeding to be a watershed rule, a rule governing what a judge may consider at sentencing cannot either.

\*     \*     \*

We are not blind to how difficult this opinion will be for John Worman to read. Yes, he committed a horrific crime—sending a pipe bomb to his former supervisor. And yes, the

district court was right to conclude that Worman deserved a substantial sentence. But so, too, is there no doubt that the district court believed that a 361-month sentence was adequate, leaving Worman in jail until he was 84. That exercise of sentencing discretion likely would have stood had the Supreme Court decided *Dean* before Worman filed his first § 2255 motion seeking resentencing. That timing, of course, is nothing Worman had any control over, and it is hard to fault him for choosing to file his first § 2255 motion. He did so *pro se*, without the benefit of counsel and surely in a good-faith effort to reduce his sentence. But it is the timing of *Dean*, when applied to the very stringent demands imposed on second and successive § 2255 motions as well as requests for traditional relief under § 2241, that requires us to AFFIRM.