In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2957

MICHAEL DEWAYNE LAIRY,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 20-cv-144 — **Richard L. Young**, *Judge.*

ARGUED DECEMBER 5, 2024 — DECIDED JULY 7, 2025

Before SYKES, *Chief Judge*, and ROVNER and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Michael Lairy petitioned for a writ of habeas corpus under 28 U.S.C. § 2255, claiming in part that he did not qualify for the Armed Career Criminal Act's ("ACCA") mandatory 15-year sentence, 18 U.S.C. § 924(e)(1), and that his counsel was ineffective for failing to raise this issue. The government did not address the underlying merits

of Lairy's claims but asserted that he raised them after the statute of limitations had expired. The district court held Lairy to his untimeliness and denied his petition. In so doing, the court rejected Lairy's arguments that the government forfeited the statute of limitations defense, he was actually innocent of ACCA, and he was entitled to equitable tolling.

For the reasons below, we agree with the district court's evaluation of forfeiture and disposition on actual innocence. But the district court abused its discretion by rejecting equitable tolling without first conducting an evidentiary hearing. We therefore vacate the denial of the petition and remand to the district court to conduct an evidentiary hearing on equitable tolling.

## I. Background

In 2018, Michael Lairy pleaded guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). At the time of his sentencing, the offense ordinarily carried a statutory maximum sentence of ten years. § 924(a)(2) (2018 ed.). But a defendant faces a more severe punishment—a statutory minimum sentence of 15 years—if he qualifies for the ACCA enhancement. A defendant qualifies for ACCA when he "has three previous convictions … for a violent felony or a serious drug offense, or both, committed on occasions different from one another …." 18 U.S.C. § 924(e)(1).

The parties initially believed Lairy's prior convictions qualified as predicate offenses for ACCA because he had three cocaine-distribution convictions in Indiana that were thought to be "serious drug offenses." Relying on these convictions, the district court sentenced Lairy to 15 years in prison. Lairy's

counsel did not object to the application of ACCA during the plea or sentencing process, and Lairy did not appeal.

Two years later, in June of 2020, Lairy filed a pro se petition for habeas corpus under 28 U.S.C. § 2255, citing the Supreme Court's decision in *Rehaif v. United States*, 588 U.S. 225 (2019), as grounds for relief. In *Rehaif*, the Court held that the government must prove "the defendant knew he possessed a firearm and … belonged to the relevant category of persons barred from possessi[on]." *Id.* at 237. Lairy amended his petition the following year—in March 2021—to develop this claim.

After pressing his *Rehaif* claim across five pages in his amended petition, he wrote in all caps, "[a]lso at least one of Mr. Lairy's prior offens[e]s used as an Armed Career Criminal predicate to enhance the sentence may not qualify and violates due process." He underlined the preceding sentence and continued, "[a]t the time Mr. Lairy was sentenced the Ausa and counsel may have been aware that Mr. Lairy's prior conviction was NOT a valid predicate offense under ACCA." He further stated that "[t]he drug priors may also be in question as more research may be needed." Lairy then continued discussing how the Court's holding in *Rehaif* cast doubt on his plea agreement and asked the court to appoint counsel so he could further amend his petition.

The government focused its answer on the *Rehaif* claim, only briefly addressing Lairy's statements about ACCA. The government referred to his statement regarding ACCA as a "Vague Sentencing Assertion [that] is Unclear," and primarily argued that Lairy waived any ACCA claim because his statement raised a perfunctory question about his drug priors rather than a cogent argument. In a concluding sentence, the government also suggested that Lairy waived his right to

challenge his conviction on collateral attack through his plea agreement, which only excepted claims related to ineffective assistance of counsel, or procedurally defaulted the claim.

The district court agreed that Lairy's reference to ACCA was too vague and appointed Lairy counsel. With the benefit of counsel, Lairy submitted a supplemental memorandum explaining that his reference to ACCA encompassed two claims. He argued that his three Indiana cocaine convictions did not qualify as "serious drug offenses" under ACCA and that his counsel was ineffective for failing to explain this issue before allowing him to accept a 15-year sentence. Lairy grounded these arguments in a line of cases explaining that state drug offenses only count as ACCA predicates when there is a categorical match between the State's definition of the drug and that under federal law. *See United States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020); *Shular v. United* States, 589 U.S. 154, 157–59 (2020). At least one district court found that Indiana's definition of cocaine does not match the federal definition because it includes a broader array of isomers. *See Alston v. United States*, No. 2:16-cv-00016-JMS-DLP, 2021 WL 82963, at *2 (S.D. Ind. Jan. 11, 2021).

The government did not—and has not since—addressed the merits of Lairy's ACCA or related ineffective assistance of counsel claim (together, "ACCA claims"). Instead, it invoked § 2255's one-year statute of limitations. *See* § 2255(f)(1). With respect to Lairy's ACCA claims, the statute of limitations began to run on July 2, 2018, when his conviction became final after his time to file an appeal expired, and ran out on July 2, 2019. But Lairy first referenced ACCA in March 2021, nearly two years late.

In the district court (as here), Lairy brought various arguments to try to avoid § 2255's statute of limitations. He argued that the government waived or forfeited the statute of limitations defense by failing to raise it in response to his amended pro se petition. In the alternative, he argued that the statute of limitations did not bar his claim because he was actually innocent of ACCA or entitled to equitable tolling.

The district court rejected each of these arguments. It concluded that the government neither waived nor forfeited the statute of limitations defense by raising it for the first time in response to appointed counsel's briefing because Lairy "was just as much to blame" for the delay. The court then rejected Lairy's actual innocence argument. It explained that circuit precedent has never extended the actual innocence exception to claims of legal innocence. The court also expressed its concern that extending the actual innocence exception in this way would unduly undermine the statute of limitations. Finally, the court denied Lairy's equitable tolling contention, without mentioning an evidentiary hearing.[1]

The district court granted Lairy a certificate of appealability, and this appeal followed.

## II. Discussion

Lairy does not dispute that his ACCA and ineffective assistance claims are untimely. He instead takes issue with the district court's analysis of forfeiture and actual innocence, along with its failure to conduct an evidentiary hearing on equitable tolling. We review issues of law de novo, factual findings for clear error, and the decision to forgo an evidentiary

---

[1] Lairy's *Rehaif* claim is not before us.

hearing for an abuse of discretion. *See Dekelaita v. United States*, 108 F.4th 960, 968 (7th Cir. 2024); *Martin v. United States*, 789 F.3d 703, 705–06 (7th Cir. 2015).

## A. Forfeiture of the Statute of Limitations Defense

"[F]orfeiture is the mere failure to raise a timely argument, due to either inadvertence, neglect, or oversight." *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020); *Bourgeois v. Watson*, 977 F.3d 620, 631 (7th Cir. 2020) (applying this rule in the habeas context). When a party forfeits a defense by raising it too late, the district court may exercise its discretion and allow the defense if the plaintiff will not suffer prejudice by the delay. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020). Here, the district court did not conduct a prejudice analysis because it concluded the government had timely raised the statute of limitations in response to appointed counsel's explanation of Lairy's claims.

Generally, the failure to raise an affirmative defense in an answer evinces forfeiture. *See Anderson v. United States*, 981 F.3d 565, 571 (7th Cir. 2020). But this rule has exceptions. *See Burton*, 961 F.3d at 965 (failing to raise an affirmative defense in an answer does "not necessarily [render it] untimely and forfeited."). It is "[o]nly when the defense is asserted later than it should have been" that the defense is untimely. *Id.*

A party is not untimely in its assertion of an affirmative defense if it could not have "reasonably known of [its] availability … at the time of the answer." *Id.* This may be the case when a plaintiff's unclear or belated presentation of his claims results in the delay. *See Bourgeois*, 977 F.3d at 631 (finding no forfeiture when the petitioner's "undifferentiated presentation of the claims[] was just as much to blame" for the

government's silence); *see also Blackmon v. Williams*, 823 F.3d 1088, 1100 (7th Cir. 2016) (same when a petitioner did not raise the basis for an argument until a supplemental memorandum). Put simply, "an unpleaded defense is not forfeited when raised promptly once its availability becomes apparent." *Burton*, 961 F.3d at 967.

In this case, Lairy's unclear and belated presentation of his claims meant that the government could not have reasonably known of the availability of a statute of limitations defense at the time the government filed its answer. Lairy's petition merely stated that "[the] drug priors may also be in question as more research may be needed" and that a predicate conviction under ACCA "may not qualify and violates due process." These undeveloped sentences did not alert the government to Lairy's two grounds for relief: that his drug convictions were not serious drug offenses under the categorical approach and his counsel was ineffective for failing to raise this issue.

Lairy's grounds for relief impacted when the statute of limitations period began. Section 2255(f) imposes a one-year statute of limitations for habeas petitions that runs from the latest of one of four events. So, if Lairy intended to raise an ACCA claim premised on a newly recognized right, *see* § 2255(f)(3), the limitations period would have begun to run on a different date than if he had discovered new facts such as the vacatur of one of his drug convictions, *see* § 2255(f)(4). And if none of the other provisions in § 2255(f) applied, then the year would run from the date Lairy's judgment of conviction became final. § 2255(f)(1). Lairy's vague assertions, however, did not reasonably apprise the government of the basis of his ACCA claims, which would in turn inform it of the applicable statute of limitations provision.

In fact, the different provisions of § 2255(f) explain why Lairy's *Rehaif* claim was timely under (f)(3), while what turned out to be his "drug prior" arguments were not under (f)(1). Lairy's brief mention of his drug priors in the middle of a developed *Rehaif* claim only served to further cloud the nature of his claims.

Lairy contends that the government should have known his claims were based on an isomer issue because this was his best argument and it was being raised in other cases at the time. But this misses the point. It is not the government's burden to create claims for Lairy and defend against what it decides is the best one. Rather, the government expressed that it did not know how to confront his vague ACCA assertion, and the district court agreed. Once appointed counsel explained Lairy's claims, the statute of limitations defense became "apparent" to the government, who then "raised [it] promptly." *See Burton*, 961 F.3d at 967.

The government's brief mention of procedural default and plea agreement waiver does not change our holding. Both of these defenses apply broadly. Lairy defaulted any claim he could have raised at trial or on direct appeal, and his plea agreement waived almost all challenges on collateral attack. To reasonably know of the availability of these defenses, then, the government only needed to know that Lairy did not mention the drug priors during his sentencing, that he did not appeal, and that he was now collaterally attacking his conviction and sentence.[2]

---

[2] Although both defenses applied broadly to claims Lairy could have raised in his petition, the government's invocation of them further

Nor do we liken Lairy's case to situations where the government raises the statute of limitations defense for the first time on appeal. In those cases, courts have expressed the irony or unfairness in holding the petitioner to a time bar while excusing the government's belated defense. *See, e.g.*, *Anderson v. United States*, 981 F.3d 565, 571–72 (7th Cir. 2020); *Cartwright v. United States*, 12 F.4th 572, 580–81 (6th Cir. 2021). Such concerns are not implicated here, where the district court even-handedly provided Lairy with an opportunity to clarify his reference to the drug priors by appointing counsel and allowed the government to fully respond to what these claims turned out to be.

We do not intend to suggest that the government avoids forfeiting its statute of limitations defense any time a pro se petitioner inartfully presents a claim. To the contrary, we readily foresee situations where the petition, though wanting in precision, reasonably apprises the government of this defense at the time of its answer. We hold only, under the limited circumstances here, which involve a single, undeveloped sentence on drug priors placed in the middle of another developed claim, that the government did not forfeit its statute of limitations defense.

---

highlights the lack of clarity in Lairy's petition. The face of the plea agreement allowed Lairy to raise ineffective assistance claims, and a § 2255 petitioner may bring ineffective assistance claims for the first time on collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). While not determinative, the government's invocation of misplaced defenses in response to Lairy's ineffective assistance of counsel claim supports our assessment that Lairy's pro se ACCA claims were far less clear than he believed them to be.

We turn now to two concepts—actual innocence and equitable tolling—that Lairy invokes to get around the statute of limitations bar.

**B. Actual Innocence Gateway**

A habeas petitioner who demonstrates actual innocence may overcome a procedural bar, such as the statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Lund v. United States*, 913 F.3d 665, 667 (7th Cir. 2019). In this way, actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The gateway's purpose is to avoid miscarriages of justice that result in the incarceration of innocent persons. *McQuiggin*, 569 U.S. at 392.

Lairy seeks to use the actual innocence gateway to access his time-barred ineffective assistance of counsel claim. To do so, he argues that he is actually innocent of ACCA because his Indiana cocaine convictions do not qualify as "serious drug offenses" under the categorical approach. Although simple on its face, this argument implicates several questions about the nature of actual innocence. We begin by addressing whether ACCA is a crime or sentencing enhancement. This in turn impacts whether we recognize and how we view the gateway.

Recall that ACCA requires three prior "violent felon[ies] or [] serious drug offense[s]" that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The Supreme Court recently held that a jury must decide whether the prior offenses were committed on different occasions because this "fact-laden" inquiry impacts the maximum and

minimum sentence a defendant faces. *Erlinger v. United States*, 602 U.S. 821, 825, 834–35 (2024). In Lairy's view, this transforms ACCA into a crime because the occasions inquiry is now an element the government must allege in an indictment and that a jury must find beyond a reasonable doubt.[3]

True, a "core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime." *Alleyne v. United States*, 570 U.S. 99, 113 (2013). But Lairy overreads *Erlinger*, which "decide[d] no more than that" a jury must "resolve ACCA's occasions inquiry," *Erlinger*, 602 U.S. at 835, and Lairy does not challenge the occasions inquiry here. In *Erlinger*, the Supreme Court took care not to say more, and it did not recharacterize ACCA as a substantive crime. Nor did it address whether a jury must decide the separate issue Lairy raises—whether certain convictions qualify as serious drug offenses—because that issue was not raised in the case. Accordingly, determining "what crime, with what elements, the defendant was convicted of" remains the province of the judge under the Court's prior precedent. *Id.* at 838 (quoting *Mathis v. United States*, 579 U.S. 500, 512 (2016)); *see also Alleyne*, 570 U.S. at 111 n.1 (recognizing the narrow exception in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), that allows judges to determine "the fact of a prior conviction").[4] Although this is the first time we have been directly

---

[3] The government asserts that *Erlinger* is not retroactive but failed to develop this argument. We therefore do not, and need not, decide this question today.

[4] We recognize that the Supreme Court has questioned this exception, but it still remains good law. *See Erlinger*, 602 U.S. at 837–38; *Agostini v. Felton*, 521 U.S. 203, 207 (1997) (courts of appeals should leave the Supreme Court "the prerogative of overruling its own decisions").

presented with the question of whether *Erlinger* impacts how we view ACCA, we have continued to describe ACCA as imposing "enhanced penalties" post-*Erlinger*. *United States v. Johnson*, 114 F.4th 913, 914 (7th Cir. 2024).[5]

Equipped with the understanding that ACCA remains a sentencing enhancement, we turn to Lairy's alternate argument that the actual innocence gateway nevertheless applies. The Supreme Court has not yet addressed whether a petitioner can be actually innocent of a non-capital sentence. *See Dretke v. Haley*, 541 U.S. 386, 391–92 (2004) (highlighting a "growing divergence of opinion" among the circuits but not resolving the issue). And Lairy and the government dispute what our caselaw says on this issue. *Compare Mills v. Jordan*, 979 F.2d 1273, 1278–79 (7th Cir. 1992) (accepting that a petitioner can avoid procedural default if he is actually innocent of a habitual offender sentence enhancement) *with Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997) (abrogating *Mills* at least in the context of successive petitions).

We need not settle this dispute today. Even assuming *Mills* applies to first-time petitioners in the way Lairy suggests, Lairy's argument fails because it is one of legal, not factual, innocence. Actual innocence "means factual innocence, not

---

[5] We are not alone in doing so. *See United States v. Valencia*, 137 F.4th 331, 333 (5th Cir. 2025) (referring to ACCA as "[t]his sentencing enhancement"); *United States v. Harvin*, No. 20-14497, 2024 WL 4563684, at *2 (11th Cir. Oct. 24, 2024) (per curiam) ("The ACCA does not create a separate offense, but merely provides for sentencing enhancements."); *United States v. Brown*, 136 F.4th 87, 96 (4th Cir. 2025) ("Clearly, the circumstances here do not involve the addition of *a new offense* to the indictment; it was, rather, the failure to allege in the indictment *but one element* of the ACCA sentencing enhancement to be decided by the jury.").

mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Factual innocence certainly includes the petitioner presenting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence …." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *McQuiggin*, 569 U.S. at 395 (emphasizing that the gateway applies to cases that involve "new evidence"). And more recently, some of our sister circuits have suggested that a subsequent change in the scope of the law that renders the petitioner's conduct no longer criminal can open the gateway. *See, e.g.*, *Vosgien v. Persson*, 742 F.3d 1131, 1134–35 (9th Cir. 2014). Legal innocence, by contrast, can look like challenging the sufficiency of the evidence in the record. *See Mills*, 979 F.2d at 1279.

Here, Lairy does not provide new evidence demonstrating he did not commit his Indiana drug offenses or even challenge that he committed the drug offenses. Nor does Lairy suggest that a subsequent change in the law renders him innocent of ACCA. In fact, Lairy disavows any reliance on a change in the law in his reply brief, explaining that his claim can only rest on cases that pre-date his conviction and that *Ruth* "did not change the law."[6]

Lairy instead contends that the district court misclassified his Indiana convictions as serious drug offenses because

---

[6] Because Lairy disavows this theory, we once again do not answer whether a change in law can demonstrate actual innocence. *See Lund*, 913 F.3d at 667–68 (presenting this question but resting our holding on other grounds); *Gladney v. Pollard*, 799 F.3d 889, 897 (7th Cir. 2015) (same); *Cobbs v. United States*, ---F.4th---, No. 23-3140, 2025 WL 1762368, at *4–5 (7th Cir. June 26, 2025) (same).

Indiana's definition of cocaine includes a broader array of drug isomers than the federal definition. We now join several of our sister circuits in holding that the misclassification of a predicate offense for a sentencing enhancement is legal innocence that does not open the actual innocence gateway. *See United States v. Pettiford*, 612 F.3d 270, 283–84 (4th Cir. 2010) (explaining that the misclassification of an ACCA predicate is a "legal argument[,] … not cognizable as a claim of actual innocence"); *McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011) (declining to "extend the actual innocence of sentence exception to claims of legal innocence of a predicate offense"); *Damon v. United States*, 732 F.3d 1, 6 (1st Cir. 2013) (contesting "only the categorization of his prior conviction as a crime of violence" is "not plead[ing] 'actual innocence'"); *United States v. Vargas-Soto*, 35 F.4th 979, 1000 (5th Cir. 2022) (explaining that an argument that a prior conviction was not an "aggravated felony" supporting a sentencing enhancement is "at best legal innocence"); *see also United States v. Peterson*, 916 F. Supp. 2d 102, 106–07 (D.D.C. 2013) (stating that "an objection to the legal classification of [an] offense" cannot excuse untimely filing).

As Lairy pointed out during oral argument, the Ninth Circuit views misclassification arguments grounded in a retroactive intervening change in the law as factual innocence. *See Allen v. Ives*, 950 F.3d 1184, 1190 (9th Cir. 2020).[7] And the Eighth Circuit excused a petitioner's procedural default of an

---

[7] The Ninth Circuit decided this in the context of the savings clause, 28 U.S.C. § 2255(e), which allows a federal prisoner to proceed under 28 U.S.C. § 2241 in a narrow set of circumstances not at issue here. *Jones v. Hendrix*, 599 U.S. 465 (2023), however, calls into question much of the savings clause caselaw upon which Lairy relies.

argument challenging the application of ACCA. *See Lofton v. United States*, 920 F.3d 572, 576–77 (8th Cir. 2019). We decline to adopt these approaches here, finding the decisions of the First, Fourth, Fifth, and Eleventh Circuits more persuasive.

Lastly, Lairy argues that even if he cannot demonstrate actual innocence, his situation falls under a broader exception for miscarriages of justice. But to support this argument, Lairy cites caselaw involving the savings clause and cognizability on collateral review. *See, e.g.*, *Guenther v. Marske*, 997 F.3d 735, 742 (7th Cir. 2021) (savings clause); *Narvaez v. United States*, 674 F.3d 621, 630 (7th Cir. 2011) (cognizability). Caselaw involving the savings clause is "inapposite." *White v. United States*, 8 F.4th 547, 557 (7th Cir. 2021). So too is caselaw about cognizability.

We therefore decline to extend the gateway to a petitioner challenging a sentencing enhancement based on a legal predicate misclassification argument. In so doing, we stay true to the Supreme Court's admonition that tenable gateway claims are "extremely rare" and for "extraordinary case[s]." *Schlup*, 513 U.S. at 321–22; *see also McQuiggin*, 569 U.S. at 395 (underscoring that the exception "applies to a severely confined category" of cases); *cf. Jones v. Hendrix*, 599 U.S. 465, 491 (2023) ("Undoubtedly, *McQuiggin*'s assertion of equitable authority to override clear statutory text was a bold one.").

## C. Evidentiary Hearing on Equitable Tolling

Finally, we turn to Lairy's argument that the district court should have conducted an evidentiary hearing on equitable tolling. We review a district court's decision to forgo an evidentiary hearing for an abuse of discretion, emphasizing that

"an error of law is, by definition, an abuse of discretion." *Martin*, 789 F.3d at 705–06.

Equitable tolling can excuse a federal habeas petitioner's untimely filing under § 2255's one-year limitations period. *Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021). Although equitable tolling is rare, it is not a "chimera—something that exists only in the imagination." *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (quoting *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014)). To receive the remedy of equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

When a petitioner's allegations supporting equitable tolling are vague or conclusory, or when "the files and records of the case *conclusively* show that the prisoner is entitled to no relief," the district court need not conduct an evidentiary hearing. 28 U.S.C. § 2255(b) (emphasis added); *Mayberry v. Dittmann*, 904 F.3d 525, 532 (7th Cir. 2018). But an evidentiary hearing is necessary when a petitioner alleges facts that, if true, would entitle him to relief. *Mayberry*, 904 F.3d at 532. A petitioner's burden for receiving an evidentiary hearing is therefore "relatively light." *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016).

Here, the record lacks any indication that the district court considered whether it should conduct an evidentiary hearing. The district court did not mention an evidentiary hearing, Lairy's request for one, or the standard under § 2255(b). We are troubled by these omissions. Instead of asking whether Lairy's allegations, if true, would entitle him to relief, it

appears the district court construed evidentiary gaps against Lairy.

Lairy sought equitable tolling because he claimed he was in lockdown for the majority of the one-year filing period, for many months after his filing period ended, and once again in March 2020 due to the COVID-19 pandemic. He also explained that he lacked access to the law library during these lockdowns and that, despite his repeated requests to his former counsel, he only received access to some of his case files a day before filing his amended petition mentioning ACCA. Lairy supported these allegations with letters describing these circumstances.

But the district court viewed this as "no evidence" because he did not state how long the COVID-19 lockdowns lasted, describe what law library and other limitations he faced, or explain why he needed his case file from his former counsel. An evidentiary hearing could have addressed these precise questions. *See Weddington v. Zatecky*, 721 F.3d 456, 464–65 (7th Cir. 2013) (requiring an evidentiary hearing on a petitioner's access to legal materials when the "record presents factual issues"); *Estremera v. United States*, 724 F.3d 773, 775–77 (7th Cir. 2013) (explaining that an evidentiary hearing would have been necessary to learn whether the petitioner pursued his rights diligently).

What is more, the answers to the issues the district court raised may very well result in a meritorious equitable tolling argument. All of the circumstances Lairy alleged are relevant considerations for equitable tolling. *See Socha*, 763 F.3d at 684–88. And equitable tolling is a fact specific inquiry. *Id.* at 686. Indeed, we cannot apply its legal standard when "we have no idea what happened." *Estremera*, 724 F.3d at 775.

The record does not "conclusively show that [Lairy] is entitled to no relief." 28 U.S.C. § 2255(b). So the district court should have conducted an evidentiary hearing to fill in factual gaps rather than overlook the inquiry altogether or resolve the gaps against him. We therefore remand to the district court to conduct an evidentiary hearing on equitable tolling.

### III. Conclusion

From time to time, we are reminded of the "stark reality that the limitations on habeas corpus relief can have very real and lasting consequences for prisoners laboring to navigate its complexities." *Worman v. Entzel*, 953 F.3d 1004, 1005 (7th Cir. 2020). This case serves as one of those reminders. Lairy is serving additional time in prison that no one disputes would be improper if he were sentenced today. But he brought his ACCA claims too late, and the government did not forfeit its statute of limitations defense.

Without access to the actual innocence gateway, Lairy must rely on equitable tolling. On remand, the district court shall conduct an evidentiary hearing to determine Lairy's eligibility for equitable tolling. We therefore VACATE the denial of Lairy's habeas petition and REMAND to the district court to conduct an evidentiary hearing for the issue of equitable tolling. We AFFIRM the judgment in all other respects.