In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1360

ALNORAINDUS BURTON,

*Plaintiff-Appellant,*

*v.*

PARTHA GHOSH and WEXFORD HEALTH SOURCES, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-08443 — **Andrea R. Wood**, *Judge.*

ARGUED DECEMBER 3, 2019 — DECIDED JUNE 8, 2020

Before WOOD, *Chief Judge*, and HAMILTON and SCUDDER,
*Circuit Judges.*

HAMILTON, *Circuit Judge*. Almost seven years into this law-
suit, after discovery had closed and with a summary judg-
ment deadline looming, defendants raised the affirmative de-
fense of res judicata for the first time, in an unexpected motion
to dismiss an amended complaint. When plaintiff responded
that the defense had been waived or forfeited, defendants ar-
gued that our opinion in *Massey v. Helman*, 196 F.3d 727 (7th

Cir. 1999), requires a district court to allow any and all new affirmative defenses whenever a plaintiff amends a complaint in any way. The district court agreed and granted defendants' motion to dismiss.

We reverse and remand. The standard for amending pleadings under Federal Rules of Civil Procedure 8(c) and 15 continues to govern the raising of new affirmative defenses even when an amended complaint is filed. *Massey* held that a defendant is entitled to add a new affirmative defense prompted by an amended complaint that changes the scope of the case in a relevant way. *Massey* does not, however, require a district court to allow any and all new defenses in response to any amendment to a complaint, without regard for the substance of the amendment and its relationship to the new defenses. Rather, a district court must exercise its sound discretion under Rules 8 and 15 in deciding whether to allow the late addition of a new affirmative defense. In this case, the late amendment to the complaint was minor and did not authorize a new res judicata defense that had been waived or forfeited years earlier.

I.  *Factual and Procedural Background*

Because Burton's claim was dismissed under Federal Rule of Civil Procedure 12(b)(6), we accept as true all well-pleaded allegations in the amended complaint, drawing all permissible inferences in his favor. *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). We may also take judicial notice of the contents of filings in Burton's first federal case. *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016).

A. *Burton's Injury and Treatment*

Plaintiff Alnoraindus Burton injured his right knee in February 2009 while incarcerated in the Illinois Department of Corrections (IDOC). Over the next year, he repeatedly sought medical attention for this injury. Burton filed formal requests, wrote letters, and even went on a hunger strike to get medical attention.

Burton's knee was not treated until March 2010, when he was finally seen by defendant Dr. Partha Ghosh, who was the Medical Director at the Stateville Correctional Center and acted as Burton's treating physician. Dr. Ghosh was employed by Wexford Health Sources, Inc., a corporation that contracted with IDOC to provide health care to its inmates. An MRI taken on May 27, 2010 revealed that Burton had suffered a torn lateral meniscus and other damage.

After reviewing the MRI, Dr. Ghosh recommended a consultation with an orthopedic specialist outside of the prison. Wexford approved the outpatient visit on July 22, and Burton visited the orthopedist on October 4, more than a year and a half after his initial injury. The surgery was finally performed two weeks later, and Burton returned to the prison that day.

Burton's discharge orders said that he should receive physical therapy and pain medication. He alleges he received neither. These needs were reiterated a week later when Burton returned to the surgeon for a follow-up appointment. But Burton still was not given pain medication, and he was denied physical therapy despite repeated letters to Dr. Ghosh informing him of these needs and a formal grievance filed in late October.

Burton was finally referred to physical therapy in December 2010 and began treatment in March 2011. Because of these delays, Burton claims, he has suffered significant and permanent damage to his knee, experiencing discomfort when walking and stiffness when sitting or standing.

B. *Procedural History*

In February 2011, Burton filed a *pro se* complaint against many Wexford health-care providers across different facilities, alleging deliberate indifference to serious medical needs and retaliation in violation of the Eighth Amendment. The case was assigned to Judge Gettleman, who dismissed the complaint because it misjoined unrelated claims and defendants. Burton filed an amended complaint, this time naming only Dr. Ghosh as a defendant. The court then recruited counsel for Burton. Dr. Ghosh was never served with a summons for either of these two complaints, though.

Instead, Burton's recruited counsel moved for leave to file a new complaint, which the court granted. But the lawyer did not actually file a new complaint as expected, so the second *pro se* complaint was dismissed without prejudice on June 5, 2012, pursuant to Federal Rule of Civil Procedure 41(a)(2), with permission to reinstate by August 6. Complicating matters in ways that have surfaced here, years later, the dismissal order added that the dismissal would become a final dismissal *with prejudice* if a motion to reinstate were not filed in time.

Burton and his lawyer did not file a motion to reinstate by the deadline, nor did they ever file an amended complaint in the original case. Instead, the same recruited lawyer for Burton filed a new complaint on October 19, 2012. The new com-

plaint was docketed as an entirely new case and was not as-
signed to Judge Gettleman, apparently because the lawyer
stated incorrectly on the civil cover sheet that the case was
"not a refiling of a previously dismissed action." The case was
randomly assigned to Judge Lefkow and later reassigned to
Judge Wood. The new complaint also added Wexford as a de-
fendant. Defendants filed their answers in May 2013. Over the
next four years, discovery proceeded.

In January 2018, after discovery was complete, and after
Burton's original recruited lawyer had withdrawn and newly-
recruited lawyers had taken the case, Burton was granted
leave to file an amended complaint. The amendments were
minor, clarifying some of Burton's original factual allegations
and emphasizing the delays in his treatment. The court issued
a brief order instructing defendants to "answer or otherwise
plead to Plaintiff's amended complaint."

Instead of amending their answer or proceeding with the
briefing schedule for summary judgment, defendants filed a
motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), raising the new affirmative defense of res judicata,
also known as claim preclusion. Defendants argued that the
dismissal of Burton's first suit with prejudice in 2012 pre-
cluded the second, and they asserted that they had become
aware of Burton's earlier dismissed case only several days
earlier. Defendants further argued (incorrectly) that even if
only the claims against Dr. Ghosh should be dismissed on res
judicata, the claims against Wexford would have to be dis-
missed because Burton could not support a deliberate indif-
ference claim against a "municipal" defendant without prov-
ing an underlying violation by its employee. In response, Bur-
ton argued that defendants had waived or forfeited the new

defense. Defendants replied that the amended complaint opened the door to new affirmative defenses, regardless of whether they had previously been waived or forfeited.

The district court granted the motion to dismiss this second suit. First, it concluded that the conditions for res judicata were met. Second, the court rejected Burton's waiver and forfeiture arguments, concluding that by filing an amended complaint, he had opened the door for the defendants to assert new affirmative defenses. The court did not determine whether the res judicata defense had been waived or forfeited earlier, whether amendment of the answer was appropriate under Rule 15, or whether there was any relationship between the amendment to the complaint and the new defense. Instead, the district court believed that language in our opinion in *Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999), required it to allow the new defense and that it had no discretion to do otherwise. Finally, the court concluded that Burton had waived any counter to defendants' incorrect argument that if claims against Dr. Ghosh were dismissed, then the claims against Wexford ought to be dismissed as well because they depend on an underlying constitutional violation by Dr. Ghosh.

Burton moved under Rule 59(e) for reconsideration. He repeated his waiver argument. He also challenged the district court's reading of *Massey* and submitted evidence that defendants had in fact known of Burton's first suit before they answered the complaint in the second. The district court denied the motion, and Burton has appealed.

II.  *Analysis*

We review *de novo* the district court's decision to dismiss Burton's claim on grounds of res judicata. *Czarniecki v. City of*

*Chicago*, 633 F.3d 545, 548 (7th Cir. 2011), citing *Tartt v. North-west Community Hospital*, 453 F.3d 817, 822 (7th Cir. 2006). We review for abuse of discretion a district court's discretionary decision to allow late assertion of an affirmative defense, *Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 482 (7th Cir. 2019), but review *de novo* the underlying legal issues, *United States v. Knope*, 655 F.3d 647, 660 (7th Cir. 2011). On appeal, Burton does not argue that the elements of res judicata are not met. Instead, he contends that defendants have waived or forfeited their res judicata defense and that the district court's decision to allow the late defense was based on a mistake of law.

A.  *Pleading Res Judicata*

Federal Rules of Civil Procedure 8(c), 12, and 15 prescribe the processes for raising affirmative defenses and considering untimely affirmative defenses. We start with Rule 8(c), which states in relevant part: "In response to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … res judicata." The proper way to seek a dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state a claim. Rather, the defendant should answer and then move under Rule 12(c) for judgment on the pleadings. *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010), citing *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007), and *McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006); see also Amy St. Eve & Michael A. Zuckerman, *The Forgotten Pleading*, 7 Fed. Cts. L. Rev. 152, 172 (2013). The same goes for summary judgment. See *Jackson v. Rockford Housing Auth.*, 213 F.3d 389, 392–93 (7th Cir. 2000); *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997). Failure to follow this process may "deprive[]

the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms." *Harris v. Secretary, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997); see also *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971) (purpose of Rule 8(c) is to give opposing party notice of affirmative defense and opportunity to contest it).

We have carved out a narrow and pragmatic exception if the availability of a defense is apparent in the plaintiff's complaint itself. E.g., *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); see also Charles Alan Wright & Arthur R. Miller, *et al.*, 5B Federal Practice & Procedure § 1357 (3d ed. 2019). Because public records from previous litigation may be considered in a motion to dismiss, *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997), it is sometimes possible to resolve a res judicata defense on a Rule 12(b)(6) motion. E.g., *Czarniecki*, 633 F.3d at 548. That exception does not apply here. The defendants had already answered the earlier complaint, there are factual disputes regarding the timeliness of the defense, and the defense depends on evidence outside the pleadings.

B. *Waiver and Forfeiture of Res Judicata*

So what happens when an affirmative defense is not raised in accordance with Rule 8(c)? An affirmative defense is waived when it has been knowingly and intelligently relinquished and forfeited when the defendant has failed to preserve the defense by pleading it. *Reed*, 915 F.3d at 478, citing *Wood v. Milyard*, 566 U.S. 463, 470 & n.4 (2012*)*. A district court may, however, exercise its discretion to allow a late affirmative defense if the plaintiff does not suffer prejudice from the delay. *Global Technology & Trading, Inc. v. Tech Mahindra Ltd.*,

789 F.3d 730, 732 (7th Cir. 2015); *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 436 (7th Cir. 2014); see also Fed. R. Civ. P. 15(a)(2) (courts should freely grant leave to amend pleadings when justice requires).

An affirmative defense that is not raised in a defendant's first answer is not necessarily untimely and forfeited. Only when the defense is asserted later than it should have been do prejudice and the district judge's discretion become relevant. If a defendant could not have reasonably known of the availability of an affirmative defense at the time of the answer, raising that defense through later amendment should be considered timely, and the district court should grant leave to amend under Rule 15(a)(2). This will often be the case where the basis for the defense is disclosed through discovery. See *Venters*, 123 F.3d at 967–68. If the defense is raised promptly after the basis for it becomes available, there will ordinarily be no unfair prejudice to the plaintiff, and amendment under Rule 15(a)(2) will be appropriate. See *id.* at 967.

But if the defense is untimely and the delay prejudices (i.e., significantly harms) the plaintiff, it is forfeited and normally may not be considered by the court. *Reed*, 915 F.3d at 478–79. Cf. *Jackson*, 213 F.3d at 393 ("As a rule, we have allowed defendants to amend when the plaintiff had adequate notice that a statute of limitations defense was available, and had an adequate opportunity to respond to it despite the defendant's tardy assertion."), citing *Venters*, 123 F.3d at 968.[1]

---

[1] Under certain circumstances, a court may invoke res judicata or claim preclusion *sua sponte* to defend the institutional interests of the judiciary. *Arizona v. California*, 530 U.S. 392, 412–13 (2000). As described below, these circumstances are absent here.

By "prejudice," we do not mean whether the defense will succeed on the merits and cause the plaintiff to lose. We mean unfair prejudice, meaning that the late assertion of the defense causes some unfairness independent of the potential merits of the defense. For example, in *Reed v. Columbia St. Mary's Hospital*, we held that a plaintiff was prejudiced by an untimely defense first raised at summary judgment, based on information that had always been in the defendant's control, because the timing deprived her of notice and the opportunity to prepare to meet the defense through discovery. 915 F.3d at 482. In *Venters v. City of Delphi*, we identified a more procedural form of prejudice: the *way* the defense was raised harmed the plaintiff by impairing her ability to respond effectively. The defendant in *Venters* first raised its affirmative defense in its reply memorandum in support of a motion for summary judgment. 123 F.3d at 969. Because the defense was presented "at the eleventh hour, without excuse and without adequate notice to the plaintiff," we reversed the grant of summary judgment and remanded for trial. *Id.*

C. *Amended Complaints and Revival of Waived or Forfeited Affirmative Defenses*

Defendants argue that forfeiture, waiver, and prejudice do not matter here because *Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999), requires district courts to allow new affirmative defenses whenever a plaintiff files an amended complaint. The district court allowed defendants' late res judicata defense and dismissed the case based on this supposedly categorical rule. But *Massey* did not adopt or apply such a categorical rule and does not compel the revival of defendants' untimely defense.

In *Massey*, we concluded that an affirmative defense of failure to exhaust administrative remedies was not waived when it was asserted in response to an amended complaint that changed the case substantially. 196 F.3d at 735. The initial *Massey* plaintiff was a prisoner bringing an Eighth Amendment claim against prison officials. The defendants asserted their exhaustion defense only after an amended complaint added a prison doctor as a new plaintiff and added a new First Amendment retaliation claim. *Id.* at 734–36. The new affirmative defense was allowed after the plaintiffs had fundamentally changed the scope of the case by adding an additional plaintiff and new theory of recovery.

Defendants rely almost entirely on a single sentence of the *Massey* opinion: "Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Id.* at 735. This sentence should not be read in isolation. When read in context, it does not support defendants' proposed rule. We meant that the *particular amended complaint at issue* opened the door for new affirmative defenses because of how significantly it changed the scope of the litigation.[2] We explained: "To hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while simultaneously locking defendants into their original

---

[2] For support, this sentence cited *Harris v. Secretary, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 n.2 (D.C. Cir. 1997), which is telling. The cited text in *Harris* said that an affirmative defense may be waived or forfeited when a defendant fails to plead it properly. If the defense is forfeited, the defendant *may* be able to recover it through a Rule 15 amendment, which will "cure any problem of timeliness associated with the forfeiture." But under Rule 15, such amendments are granted at the discretion of the district judge.

pleading." *Id.* To deny the affirmative defense under those circumstances would "clearly contravene Federal Rule of Civil Procedure 15(a)" because the interests of justice required amendment. *Id.*

*Massey* is best understood as an application of Rule 15(a)(2): when an amended complaint fundamentally changes the scope or theory of the case, the interests of justice will generally allow a new, relevant affirmative defense to be asserted. This is just a different articulation of the principle that an unpleaded defense is not forfeited when raised promptly once its availability becomes apparent.

Defendants assert that any amendment, regardless of its scope, should open the door to any and all new defenses. A changed name, a substituted party, correcting a typographical error? According to defendants, even the slightest change is enough. Defendants' rule would drastically undermine district judges' control over the pleading process under Rule 15 and would lose sight of Rule 1's instruction to construe the Rules to secure the just, speedy, and inexpensive resolution of civil actions. In the usual course, the district judge should be free to exercise discretion within the bounds established by Rule 15, and Rule 15 does not require leave in every case. See *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). For example, the court "need not allow an amendment when there is undue delay [or] undue prejudice to the opposing party." *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016), quoting *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001); see also Wright & Miller, 5C Federal Practice & Procedure § 1388 ("The filing of an amended complaint will not

revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.").

Other circuits have adopted the approach we apply here. In *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194 (11th Cir. 2011), the Eleventh Circuit held that a defendant should have been allowed to rescind its waiver of its right to arbitration when the plaintiffs amended their complaint to broaden the class definition. *Id.* at 1203. The court based its decision not on the mere fact of an amendment but explained that "when a plaintiff files an amended pleading that unexpectedly changes the shape of the case," the case may be so altered that the defendant should be allowed to rescind its waiver. *Id.*, citing *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). The defense was "revived" by the amended complaint because "plain fairness" required it, *id.* at 1204, but the court did not imply that even a trifling amendment would have the same effect.[3]

This case is outside the bounds of the *Massey* teaching because the amended complaint did not change the theory or scope of the case in a way relevant to the new defense. Burton's amended complaint did not add a new cause of action, change the theory of liability, change the parties, assert new claims, or otherwise transform the litigation in any way. Instead, it added detail to the existing factual allegations and

---

[3] A frequently-cited nonprecedential order, *Manasher v. NECC Telecom*, 310 F. App'x 804, 807 (6th Cir. 2009), came to the same conclusion we reach here, affirming a denial of arbitration because the defendant had waived any right to arbitrate. The waived defense could not be revived in response to an amended complaint that "did not substantially change the theory or scope" of the case. *Id.*

emphasized the delay in medical treatment as a part of Burton's deliberate-indifference claim using information obtained from discovery. The minor amendments had nothing to do with a res judicata defense. They could not support allowing this new affirmative defense so late in the case.

Defendants also argue that the district judge's instruction to "answer or otherwise plead to Plaintiff's amended complaint" was an invitation to raise new affirmative defenses. This argument is without merit. First, a new answer is *required* when a complaint is amended. The district court merely complied with Rule 15(a)(3) by setting a 14-day timeline for the "required response" to the amended pleading. No one contends that defendants were not permitted to respond to the amended complaint. But the invitation to answer an amended complaint should be understood as permission to plead *in response* to the amendments, as contemplated by Rule 15(a)(3), unless leave is expressly given to raise new defenses unrelated to the amendments. In the usual course, this means responding to the new substance of the amended complaint.[4]

---

[4] Before 2007, Rule 15(a) specifically required that "[a] party shall plead in response to an amended pleading." (2006). Courts interpreting this rule have understood this required responsive pleading to be limited in scope by the substance of amendments to the first pleading. See *St. Paul Fire & Marine Insurance Co. v. Onvia, Inc.*, No. C06-1056-RSL, 2007 WL 1575955, at *1 (W.D. Wash. May 29, 2007) (allowing only responsive counterclaims following an amended complaint and noting that the approach "is predominant in the caselaw and consistent with Rule 15's requirement that an amended pleading must 'plead in response' to the amended pleading"); *E.E.O.C. v. Morgan Stanley & Co., Inc.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002) ("If every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause.

Second, the district judge made clear in granting defendants' motion to dismiss that she was not exercising discretion. Rather, the judge felt compelled by *Massey* to allow the new affirmative defense. (Also, defendants did not actually "answer or otherwise plead" the affirmative defense but instead raised the new defense in a motion to dismiss. See Fed. R. Civ. P. 7 (distinguishing pleadings from motions). Confusing pleadings and motions contributed to some of the problems presented by this appeal.)

The district court erred in concluding that *Massey* required it to allow defendants' new affirmative defense. Because of the limited scope of the amendments, Burton's amended complaint was irrelevant to defendants' late assertion of an affirmative defense. It did not wipe the slate clean and render irrelevant the previous failure to raise it.

D. *Forfeiture of Defendants' Res Judicata Defense*

We now consider whether the district court may, within its discretion, consider the res judicata defense on remand. Burton argues that the defense was waived or forfeited. We agree that the defense was forfeited, at least, and we agree with Burton that the untimely assertion of the defense prejudiced Burton. On this record, allowing defendants' late res judicata defense would be an abuse of discretion even under the liberal standard of Rule 15(a)(2).

---

This would deprive the Court of its ability to effectively manage the litigation."). We agree with this view. The Committee Notes on the 2007 Amendments to the Rules say that the changes to Rule 15 that gave it its current wording were "intended to be stylistic only."

Burton first argues that defendants have waived the res judicata defense. When moving for reconsideration of the district court judgment, Burton submitted a sworn declaration from his first attorney, Joshua Grenard, who testified that he informed Dr. Ghosh's prior counsel, Patrick Halliday, of the first case before Halliday even appeared in this new case. Halliday responded that he would not raise the untimely filing of the new complaint after the prior dismissal as a defense, and he filed an answer to the new complaint without raising res judicata. If these facts are correct, they would show a knowing and intelligent relinquishment—i.e., waiver by any definition—of res judicata. See *Wood*, 566 U.S. at 470 n.4. This evidence was presented in the district court over a year before defendants submitted their briefs on appeal. Defendants have not contested this evidence. Instead, they have insisted that their notice of the earlier lawsuit is "immaterial." It is not. But despite defendants' repeated avoidance of this issue, we cannot settle the factual dispute now because it was not addressed in the district court and the proper resolution of the issue is not "beyond doubt." *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County*, 325 F.3d 879, 884 (7th Cir. 2003), quoting *AAR Int'l, Inc. v. Nimelias Enterprises, S.A.*, 250 F.3d 510, 523 (7th Cir. 2001), quoting in turn *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

Beyond any factual dispute, however, defendants' affirmative defense was untimely and forfeited. Defendants were never served with the complaint and summons in the first case. But the key information at issue—the existence of the earlier lawsuit—was a matter of public record. Most important, defendants were told about the previous case at several points during this second case. Burton referred to the earlier complaint during his deposition testimony in 2015, three

years before defendants raised their defense. He explained that he had filed an earlier complaint against another doctor at an IDOC facility and that there was "one big complaint" including that doctor, Dr. Ghosh, and others. Defense counsel responded that "the only complaint I have right now naming Dr. Ghosh … names Dr. Ghosh and Wexford Health Sources, the employer," and moved on.

Two years later, in June 2017, attorney Grenard moved to withdraw. His motion stated specifically that he had been recruited by the court to serve as *pro bono* counsel to Burton and cited the case number of the earlier matter. Even if these events were not enough to show intentional waiver, when combined with the six-year history of the case, extensive discovery, and the public nature of the relevant information, they establish that the defense was untimely in 2018.

We arrive at this conclusion even though the affirmative defense focuses on omissions by Burton's original counsel. He missed the deadline for filing an amended complaint and then said incorrectly on the civil cover sheet for the new case that it was "not a refiling of a previously dismissed action." If he had correctly characterized the case as a refiling of the original case, the case would have been assigned to Judge Gettleman and any conflict with the earlier judgment could have been resolved immediately. Still, given the information available to defendants, six years is simply too long for this res judicata defense to be timely.

Burton was prejudiced by the delay in raising the defense. Burton proceeded for over six years in pursuing this claim, including years of discovery. We have said that the expense of conducting a suit does not count as prejudice. *Global Technology & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732

(7th Cir. 2015), citing *Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005), and *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010). But as this case shows, delay can disadvantage a party in ways that go beyond mere cost.

If the res judicata defense had been timely raised in the original answer, Burton would still have been able to seek relief from the earlier final judgment under Rule 60. The final judgment in the earlier case resulted from the odd metamorphosis of a dismissal without prejudice into a dismissal with prejudice. This new case, in which a plaintiff filed a new complaint several months late, would certainly permit an argument that the error amounted to "excusable neglect" that would permit relief from judgment. Fed. R. Civ. P. 60(b)(1). The case for allowing relief from judgment would have been particularly strong because the lack of service in the first case meant that defendants were not prejudiced at all. Conditions imposed on voluntary dismissals are imposed to protect other parties from prejudice, which was not necessary in this case because the first case had been dismissed before these defendants even knew it existed. See *Ratkovich v. Smith Kline*, 951 F.2d 155, 158 (7th Cir. 1991).

Burton was further prejudiced by defendants' improper raising of res judicata in a late motion to dismiss. The events here show why presenting affirmative defenses in a motion to dismiss can be so troublesome. It allows a defendant to ambush a plaintiff, distorting the process contemplated by the Rules and impairing plaintiff's ability to confront untimely defenses. Ghosh and Wexford filed their Rule 12(b)(6) motion after discovery had concluded and with a summary judgment deadline looming. Burton's attorneys were expecting to ad-

dress the merits of the case, not an untimely res judicata de-
fense brought years into the litigation. They had limited time
to respond to an unexpected motion that required them not
only to address the defense on its merits but also to search
years of litigation history to determine whether the defense
had been waived or forfeited.

This procedural tactic thus gave defendants the benefit of
an amended pleading without having to address in their mo-
tion whether amendment was appropriate. Defendants said
nothing in the motion about Rule 8(c), the timing of affirma-
tive defenses, or the standard for amendment. They first ad-
dressed the core issue—the propriety of the amendment—
only in their reply, after Burton correctly pointed out that the
motion to dismiss put the cart before the horse. And even
when they got there, defendants argued in reply, when it was
too late for plaintiff to be heard on the issue, that the district
court was *required* by case law to allow the new defense.

These tactics blindsided plaintiff. He had to both rebut the
substantive defense and bring to the court's attention the pro-
cedural issue that should have required its own motion for
leave to amend from defendants. And because defendants did
not raise the core issue until their reply, plaintiff was unable
to respond as effectively as if the issue of amendment had
been raised properly. The procedural errors created by de-
fendants' improper motion to dismiss unfairly prejudiced
Burton's ability both to contest the merits of the res judicata
defense and to encourage the district court to exercise its dis-
cretion to forbid amendment of the answer. This is the kind of
procedural prejudice that led us to reverse in *Venters*, 123 F.3d
at 968. Cf. *Jackson*, 213 F.3d at 393 (plaintiff was not prejudiced

when district court permitted defendant to amend answer because the court required defendant to request leave to amend, required defendant to brief the motion separately, and gave plaintiff opportunity for additional discovery to oppose motion).[5]

This procedural prejudice is particularly striking here because there were substantive questions about the applicability of res judicata that needed to be fully addressed. Defendants assert that they were not on notice of the first case because they were never served. The lack of notice is essential to their defense. If they were on notice, waiting almost six years to raise the defense would amount to waiver. Yet if, as they say, they were not on notice, none of the rationales for applying res judicata apply. Preclusion doctrines serve to limit "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Walczak v. Chicago Board of Education*, 739 F.3d 1013, 1020 (7th Cir. 2014), quoting *Matrix IV, Inc. v. American Nat'l Bank & Trust*

---

[5] Defendants point out that plaintiff could have sought leave to file a sur-reply. Perhaps, but we will not hold against a party its decision not to seek leave to file a sur-reply. See *Costello v. Grundon,* 651 F.3d 614, 635 (7th Cir. 2011) ("there is no requirement that a party file a sur-reply to address an argument believed to be improperly addressed"), quoting *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 763 n.1 (7th Cir. 2008). Ironically, defendants argue in their sur-reply on appeal that they experienced prejudice because Burton raised new arguments in his reply brief affording them "little opportunity to review the new arguments" and respond. Burton did not present new arguments in his reply brief. He merely developed those made in the opening brief, which is appropriate. The point is well taken, however, with respect to prejudice Burton experienced in the district court.

*Co.*, 649 F.3d 539, 547 (7th Cir. 2011), quoting in turn *Montana v. United States*, 440 U.S. 147, 153–54 (1979) (alterations in *Matrix IV*). There is no unfairness, no vexation, no undue expense, and no violation of reliance interests when defendants must confront on the merits a claim whose predecessor went completely unnoticed before it was dismissed. They did not have to litigate the claim in the first place. This case is the second trip to court for Burton, but it is the first for Ghosh and Wexford on his claims.[6]

These equitable considerations are reflected in the doctrine. Courts still apply the mutuality requirement for claim preclusion even though that requirement has been abandoned for issue preclusion. *Coleman v. Labor & Industry Review Comm'n of Wisconsin*, 860 F.3d 461, 469 (7th Cir. 2017), citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), and *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971); see also Wright & Miller, 18A Federal Practice

---

[6] The judicial economy rationale is similarly weak here because the district judge in the first lawsuit originally dismissed the case without prejudice, expecting that the case would proceed once Burton filed a new complaint. And inconsistent decisions will not result when the first case was dismissed voluntarily at the pleadings stage. Courts should be particularly cautious in raising res judicata *sua sponte* in such cases:

> [I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. … [But] [w]here no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication.

*Arizona v. California*, 530 U.S. 392, 412–13 (2000) (citation and quotation marks omitted). This is not a case in which it would be appropriate for the district court to consider a preclusion defense *sua sponte*.

& Procedure § 4464.1. Under the doctrine of mutuality, "neither party c[an] use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." *Parklane Hosiery*, 439 U.S. at 326–27. To bind a person by an *in personam* judgment, the court must acquire jurisdiction over the that person by service of process. *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008), quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940), citing in turn *Pennoyer v. Neff*, 95 U.S. 714 (1877). If a party has not been served and is not under the court's jurisdiction, then the court's judgment cannot bind it. If a party could not have been bound itself, then mutuality would forbid that party from invoking claim preclusion. The late affirmative defense of res judicata is thus highly doubtful on the merits here. If the affirmative defense had been raised properly, Burton would have been better able to address these issues.

To sum up, defendants' untimely res judicata defense prejudiced Burton both substantively and procedurally, so it would be an abuse of discretion to allow them to raise the defense on remand.

### E. *Separate Ground for Dismissal of Wexford*

The district court gave an additional reason for dismissing the claim against Wexford. Defendants argued before the district court that if Ghosh were dismissed, Burton would be unable to prove an underlying constitutional violation, citing *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Burton failed to assert any defense to the argument, so Wexford was dismissed on this ground as well.[7]

---

[7] The district court further observed that the "amended complaint *does not appear* to set forth a *Monell* claim against Wexford" (emphasis added). Because this issue was not clearly resolved by the district court and was

The claim against Dr. Ghosh is going forward, but defendants' theory was also wrong as a matter of law. Individual liability is not a prerequisite for a *Monell* claim. E.g., *Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc) (reversing summary judgment for corporation on *Monell* claim for policies deliberately indifferent to serious health needs of prisoners with complex, multiple illnesses, despite absence of evidence that any one employee-physician was deliberately indifferent). Indeed, that is a central point of *Monell*: the municipal entity is liable because of its own actions, not merely because of the wrongful conduct of one of its employees.

*  *  *

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

not raised in defendants' motion to dismiss, we will not treat it as an independent ground for affirming dismissal. Referring to Wexford as a "municipal entity" for purposes of *Monell* is a bit odd, since it is a for-profit corporation rather than a municipal governmental entity. Under circuit law, though, it is permissible; we addressed the controversy involving such treatment in another case involving Wexford in *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782 (7th Cir. 2014), among other cases.