In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1562

KIMBERLY BALLARD

*Plaintiff-Appellant,*

*v.*

AMEREN ILLINOIS COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:24-cv-01185 — **Jonathan E. Hawley**, *Judge.*

ARGUED FEBRUARY 17, 2026 — DECIDED APRIL 28, 2026

Before BRENNAN, *Chief Judge*, and RIPPLE and TAIBLESON,
*Circuit Judges.*

TAIBLESON, *Circuit Judge*. Kimberly Ballard worked at
Ameren Illinois Company until February of 2018, when she
was fired—in Ballard's view, because of her physical disability. Ballard pursued relief through the Illinois Department of
Human Rights ("IDHR"), filing a Complainant Information
Sheet ("CIS") in August of 2018 that described the discrimination and retaliation she allegedly suffered. The IDHR took

about two years to complete its intake and investigative process, after which Ballard received a "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC").

Ballard did sue, claiming that Ameren violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, by discriminating and retaliating against her on the basis of her disability. The district court dismissed her suit, concluding that Ballard had not satisfied the statutory requirement to file a "charge" of employment discrimination within 300 days of the alleged incident because her CIS did not constitute a "charge" for purposes of the ADA. The district judge did not consider whether equitable tolling of the 300-day clock was warranted.

We vacate and remand. Under our precedent, the district judge correctly concluded that Ballard's CIS was not a "charge." But we remand for the court to consider Ballard's equitable tolling argument, which has some support in the currently incomplete record.

## I. Background

Ballard began working for Ameren as an energy efficiency advisor in 2013. In February of 2015, while attending a work-related conference, Ballard fell and injured her wrist. She later underwent surgeries to address the injury and requested related work accommodations. In the years following her injury, Ballard alleges that Ameren repeatedly discriminated and retaliated against her on the basis of her disability, including by issuing her negative performance reviews, passing her

over for promotion, and ultimately terminating her on February 26, 2018.[1]

On August 23, 2018—178 days after her termination—Ballard submitted a CIS to the IDHR. That form required Ballard to name the company "that [she] believe[d] discriminated against [her] in Illinois," and to describe "the issues and bases [she was] requesting IDHR to investigate." Ballard accordingly named Ameren and its involved employees, and she described Ameren's awareness of her disability and the adverse employment consequences that she allegedly suffered.

In the months that followed, Ballard exchanged multiple emails with IDHR staff. Those are described in more detail below; here, it suffices to note that the IDHR confirmed it had received Ballard's CIS and was working on the matter. After several rounds of back and forth between Ballard and the IDHR, the agency finalized her formal charge of discrimination on September 5, 2019—556 days after her termination. That document contained, in substance, the same allegations and factual details that were in the CIS.

The IDHR ultimately dismissed Ballard's case for lack of substantial evidence in August of 2020, and the EEOC sent Ballard a Notice of Right to Sue in November of that year. In March of 2021, Ballard filed her initial lawsuit in the district court *pro se* against Ameren, alleging employment discrimination and retaliation on the basis of her disability in violation of the ADA. Just over two years later, the district court granted Ballard's motion to voluntarily dismiss that case

---

[1] These allegations come from the complaint, and we recite them here "without vouching for their truth." *Nelson v. City of Chicago*, 992 F.3d 599, 602 (7th Cir. 2021).

without prejudice. In May of 2024, Ballard, now represented by counsel, filed the present action against Ameren, once again alleging discrimination and retaliation under the ADA. Ameren moved to dismiss Ballard's complaint as untimely and for failure to state a claim. The district court granted the motion on the grounds that Ballard had failed to file a charge of employment discrimination with the IDHR within 300 days of her termination, as the ADA required.

Ballard, once again proceeding *pro se*, filed a motion for reconsideration, reasserting that her CIS qualified as a charge under Supreme Court precedent. Ballard also sought reconsideration on equitable tolling grounds, emphasizing that some correspondence from the IDHR had described her "charge" as filed on August 24, 2018, the date her CIS was filed. The district court denied the motion for reconsideration, finding that Ballard failed to demonstrate a "manifest error of law or fact," without addressing the equitable tolling argument. This appeal followed.

## II. Discussion

We review *de novo* a district court's decision to dismiss a complaint on timeliness grounds, such as failure to comply with the ADA's charge-filing deadline. *See, e.g.*, *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014); *Newbold v. Wis. State Pub. Def.*, 310 F.3d 1013, 1015 (7th Cir. 2002).[2]

---

[2] The record reflects some confusion about the procedural posture at the time this case was dismissed. Ameren never answered the complaint, and the district judge analyzed its motion to dismiss under Rule 12(b)(6). As the district judge noted, however, "[t]he proper way to seek a dismissal based on an affirmative defense" like untimeliness is normally to "move

The ADA prohibits covered employers from discriminating against "qualified individual[s] on the basis of disability in regard to … the hiring, advancement, or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA's enforcement provision incorporates § 2000e–5 of Title VII, which requires "the person aggrieved" to file a "charge" of discrimination "with a State or local agency with authority to grant or seek relief from such practice … within three hundred days after the alleged unlawful employment practice occurred." *Id.* § 2000e–5(e)(1); *see id.* § 12117(a). The "State or local agency" in this case—the IDHR—has a work-sharing agreement with the EEOC, whereby the IDHR automatically cross-files some documents with the EEOC. *See Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016). When agency proceedings are complete, or if agency action is not forthcoming, the EEOC issues the complainant a "right to sue" notice, and the complainant then has 90 days to bring suit. 42 U.S.C. § 2000e–5(b),

---

under Rule 12(c) for judgment on the pleadings." R.9 at 6 n.3 (quoting *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020)). Further complicating matters, both parties filed and the district judge considered "matters outside the pleadings" in addressing the timeliness issue, which normally requires that "the motion … be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see, e.g., Watkins v. Mohan*, 144 F.4th 926, 941 (7th Cir. 2025). For our purposes, it makes no difference: We review the legal question whether Ballard's CIS constituted a charge *de novo* regardless, as the parties agree. But we flag this procedural issue for further consideration upon remand.

f(1); 29 C.F.R. § 1601.28; *see Fort Bend County v. Davis*, 587 U.S. 541, 545 (2019).[3]

Ballard submitted her CIS to the IDHR within 300 days of her termination, but the IDHR did not transform that CIS into a finalized charge cross-filed with the EEOC until after the 300-day window had passed. The legal question before us is whether the CIS itself satisfies the "charge" requirement of § 2000e–5. We have previously held that it does not, and we follow that precedent today. We also consider, however, whether Ballard might make a case for equitable tolling of the 300-day clock, and conclude that she may.

### A. The Charge Requirement

In *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the Supreme Court considered the meaning of the word "charge" as it appears in a parallel statutory scheme. Noting that the term has no statutory definition, the Court considered the EEOC's relevant regulations, policy statements, and litigation positions, and the Court granted some deference to the EEOC in its interpretation. *Id.* at 398–402. Applying that deferential mode of statutory interpretation, the Court concluded that "if a filing is to be deemed a charge[,] it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402; *see id.* at 404 (stating "that the agency acted within its authority in formulating th[at] rule"). While the continuing viability of that interpretive method is questionable, the Court's conclusion

---

[3] How Ballard satisfied that 90-day deadline in the instant suit is far from clear. But the district court did not address this point below, and no one has raised it on appeal.

remains binding under principles of statutory *stare decisis*. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

In *Carlson*, we applied *Holowecki* to determine whether an IDHR CIS, like the one Ballard completed, constitutes a charge that could satisfy the ADA's 300-day requirement. 840 F.3d at 467–68. The answer to that question was no: *Carlson* held that the CIS filed in that case was "not a charge" because it did "not request remedial action." *Id.* at 468. Instead, we determined that the CIS was a "pre-charge screening form"— "merely a prelude to a charge, and not the charge itself." *Id.* at 467–68. Ballard concedes that *Carlson* is dispositive here but urges us to overturn it, arguing that it misapplied *Holowecki*.

That is too big an ask. *Carlson* directly answered the question presented in this case, and we are bound to follow it. The doctrine of *stare decisis* "reflects [our] respect for the accumulated wisdom of judges who have previously tried to solve the same problem," *Ramos v. Louisiana*, 590 U.S. 83, 115–16 (2020) (Kavanaugh, J., concurring in part), and applying it "keep[s] the scale of justice even and steady, and not liable to waver with every new judge's opinion," *id.* (quoting 1 W. Blackstone, Commentaries on the Laws of England 69 (1765)). Thus where our precedent is clear, overturning it requires a "compelling reason." *McClain v. Retail Food Emps. Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005).

Ballard points to no compelling reason here, nor have we found one. *Carlson* has not been "overruled or undermined by the decisions of a higher court" or by a statutory amendment. *Haas v. Abrahamson*, 910 F.2d 384, 393 (7th Cir. 1990) (quoting *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987)). Nor are we persuaded that *Carlson* was inconsistent with *Holowecki* in the first instance. The specific document at issue

in *Holowecki* was an EEOC intake questionnaire, similar in design to the CIS. *See Holowecki*, 552 U.S. at 394. In concluding that the filing there constituted a charge, the Court relied on a six-page affidavit that was attached to the questionnaire, the end of which included a request from the complainant to "[p]lease force [the employer] to end their age discrimination plan." *Id.* at 405. The Court construed that statement "as a request for the agency to act," and the Court expressly recognized that "[w]ere the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action." *Id.*

The CIS, standing alone as it does here, contains no such request for action. Ballard argues otherwise by pointing to language in her CIS that "authorize[d] EEOC to look into the discrimination alleged above" and "consent[ed] for IDHR to disclose [her] identity and personal information as necessary to process and investigate [her] charge." R.6-1 at 14. But that language was conditioned on the IDHR ultimately accepting Ballard's claim and converting it into a formal charge. The CIS stated, "*If IDHR takes a charge* based on the information provided, I consent for IDHR to disclose my identity," and "*If my charge is regarding an employment jurisdiction …* I authorize EEOC to look into the discrimination alleged above." *Id.* (emphasis added). Underscoring that additional steps were to follow, the "instructions" section of the CIS expressly warned that the "IDHR must establish if it has the right under the law to investigate your claim." *Id.* at 11. That section further stated: "**THIS IS NOT A CHARGE**. If IDHR accepts your claim, we will send you a charge form for signature." *Id.* (emphasis in original); *see, e.g.*, *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 765 (6th Cir. 2025) (emphasizing intake questionnaire's "unequivocal statement" that it is "**NOT A CHARGE**

**OF DISCRIMINATION**" in concluding that the question-naire did not request remedial action).

To be fair to Ballard, the IDHR's charge process can be confusing, especially for *pro se* litigants. The IDHR website directs complainants who are seeking to file a charge of discrimination to submit a CIS; there is no alternative to file a formal charge directly.[4] And it is the IDHR—not the complainant—that ultimately prepares the formal charge based on the information in the CIS, meaning that the complainant herself cannot control the timing of the charge's submission. That is an awkward fit with the 300-day clock in statutes like the ADA, which the complainant bears the burden of satisfying. To add to the confusion, under Illinois law, it appears that a CIS *does* qualify as a "charge" that satisfies the comparable deadline for Illinois Human Rights Act claims. *See Gonzalez v. Hum. Rts. Comm'n*, 534 N.E.2d 544, 548 (Ill. App. Ct. 1989); 775 ILL. COMP. STAT. 5/7A-102; ILL. ADMIN. CODE tit. 56 §§ 2520.330, 2520.350.

But *Holowecki* does not tell us how to weigh these considerations, especially without relying on the agency deference principles that animated *Holowecki*'s reasoning. *Cf. Holowecki*, 552 U.S. at 408 ("Today the Court decides that a 'charge' of age discrimination … is whatever the Equal Employment Opportunity Commission (EEOC) says it is.") (Thomas, J., dissenting); *id.* at 416 (noting the "malleability of the Court's test"). We are, as a result, unconvinced that *Carlson* erred in applying *Holowecki*, and we follow *Carlson* here. Under *Carlson*, the district judge correctly concluded that Ballard's CIS

---

[4] IDHR, Filing a Charge, Employment, https://dhr.illinois.gov/filing-a-charge/employment.html (last visited Apr. 28, 2026).

was not a charge and that Ballard therefore failed to comply with the 300-day deadline of § 2000e–5(e)(1).

### B. Equitable Tolling

The 300-day filing deadline is "not a jurisdictional prerequisite to filing a federal lawsuit, but rather, is more akin to a statute of limitations and subject to … equitable tolling under appropriate circumstances." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999). Ballard asked the district court to consider equitable tolling here, based on a series of confusing communications she had with the IDHR before filing suit.[5]

As noted above, Ballard submitted her CIS on August 23, 2018—178 days after her termination. On December 21, 2018—298 days after her termination—an IDHR investigator emailed Ballard and informed her that her "information" was "recognized as having been filed on" August 24, 2018 with the EEOC, that it would be cross-filed with the EEOC, and that "no further action [was] required" of her at that time. The email also stated that Ballard would "receive either a drafted charge against Ameren Illinois to review or a request for additional information, if necessary."

On January 30, 2019, Ballard responded to the IDHR investigator and asked whether the reference number provided was the same number referencing her EEOC claim. On January 31, the investigator responded that there was "not a more

---

[5] Ballard raised the issue of equitable tolling in her motion for reconsideration under Rule 59(e). Ameren has not argued that she waived the claim by raising it at that point; instead, Ameren contests the merits of any claim for equitable tolling. Ameren has therefore waived any argument of waiver. *See Pable v. Chi. Transit Auth.*, 145 F.4th 712, 725 (7th Cir. 2025).

specific EEOC charge number assigned … until it is determined that a formal charge of discrimination is able to be drafted. … That is also when it will be formally cross-filed with EEOC."

On July 15, 2019—after at least one more inquiry by Ballard about the status of her case—the IDHR sent Ballard a "formal statement of charge" that the IDHR had drafted based on the information provided in the CIS. On August 8, Ballard wrote to the IDHR with corrections to the charge, noting that letter was the fourth round of corrections she had made. She signed the final charge on August 31, and it was mailed to Ameren on September 13.

On November 18, 2019, the IDHR investigator emailed Ballard and stated that "[t]he charge cited was filed on August 24, 2018 [the date her CIS was filed] and perfected on September 5, 2019." On December 17, Ballard received another letter from the IDHR which again stated that the "IDHR's records show that on August 24, 2018, you filed your charge."

Ballard argues that this correspondence was confusing, and at times contradictory, as to the precise question at issue here—whether her August 24, 2018 CIS amounted to a charge. Based on the limited record available, Ballard makes a fair point. The IDHR sometimes referred to Ballard's CIS filing as a "charge," and other times differentiated between the two. Even when the IDHR was differentiating between the two and clarifying that a "formal charge" was still in the works, the agency simultaneously reassured Ballard that she had already done her part: "[N]o further action is required of you at this time." And the agency repeatedly confirmed that Ballard's "charge" was deemed filed as of the date the IDHR received her CIS. While those statements might have been accurate as

a matter of Illinois law, they were likely misleading as to Ballard's federal claims. And, at least on the record before us, the IDHR did not differentiate between Illinois and federal requirements. Just the opposite: it confirmed that its own process would automatically trigger a filing with the EEOC.

Contrary to the IDHR's advice, Ballard did need to take "further action" to file a charge by the 300-day federal deadline. Equitable tolling may be appropriate when an "administrative agency misleads" a complainant, particularly one who is proceeding *pro se*. *Newbold*, 310 F.3d at 1015; *Watkins v. Mohan*, 144 F.4th 926, 946 (7th Cir. 2025). Ballard argues that the IDHR's misrepresentations "'lulled' [her] into inaction," and that seems possible on the limited record before us. *Schroeder v. Copley Newspaper*, 879 F.2d 266, 271 (7th Cir. 1989); *see, e.g.*, *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 81 (7th Cir. 1992) (tolling 300-day EEOC filing deadline given erroneous representations made to complainant by EEOC officials).

At the same time, "[e]quitable tolling does not 'bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term.'" *Watkins*, 144 F.4th at 947 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990)). A court must also determine "whether [the complainant] filed the (real) charge as early as he realistically could…. That would require determining when he found out that he may not have filed a charge and how soon afterward he filed it." *Early*, 959 F.2d at 81 (internal citation omitted).

These are record-intensive questions, and the record before us is not complete. As just one example, we have no indication of what, if anything, precipitated the IDHR's December 21 email informing Ballard that "no further action" was

required of her. The gaps in the record are not surprising; "[a]t the pleading stage, there will usually be an 'obvious need for further factual development' on a plaintiff's equitable tolling argument." *Watkins*, 144 F.4th at 941 (citation omitted).

The district judge is "best positioned to undertake this 'equitable, often fact-intensive inquiry,' in the first instance." *Id.* at 946 (quoting *Holland v. Florida*, 560 U.S. 631, 654 (2010)). Doing so will likely require "convert[ing] [Ameren's] motion to dismiss into a motion for summary judgment after giving both sides 'a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* at 941 (quoting Fed. R. Civ. P. 12(d)). Once the record is complete, our decisions in *Early*, 959 F.2d 75, and *Newbold*, 310 F.3d 1013, may be particularly helpful in gauging the strength (or weakness) of Ballard's case for equitable tolling. If the district judge ultimately finds that Ballard has "established extraordinary circumstances warranting equitable tolling, the limitations period should be tolled for as long as [Ballard] was reasonably diligent. No more but also no less." *Watkins*, 144 F.4th at 947.

\* \* \*

We VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.